*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CF-1451

ROOSEVELT WHITFIELD, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CF2-3007-10)

(Hon. Anthony C. Epstein, Motion to Suppress Judge)
(Hon. Robert E. Morin, Motion to Dismiss Judge)

(Argued December 18, 2013　　　　　　　　Decided September 18, 2014)

*Christine A. Monta*, Public Defender Service, with whom *James W. Klein* and *Alice Wang*, Public Defender Service, were on the brief, for appellant.

*Stephen Rickard*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Jeff T. Cook*, and *Angela G. Schmidt*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and NEBEKER, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*: Appellant Roosevelt Whitfield, an

off-duty bank security guard and member of the United States Air Force at the time

of his arrest,[1] was stopped by the police after the officers observed that the lower portion of the Texas license plate located on his vehicle was obstructed by the license plate frame, thereby concealing the state nickname — "Lone Star State" — which the officers believed violated District of Columbia traffic laws.[2] During the ensuing traffic stop, a handgun and ammunition were discovered and appellant was arrested. Following a suppression hearing, he conditionally pleaded guilty to attempted carrying a pistol without a license ("CPWL"), possession of an unregistered firearm ("UF"), and unlawful possession of ammunition ("UA").[3] On appeal, appellant makes two principal arguments. First, the trial court erred in denying his motion to suppress because the police did not have reasonable, articulable suspicion to make the traffic stop because the partially obstructed license plate did not violate District of Columbia law. Second, and alternatively, the CPWL, UF, and UA statutes are unconstitutional as applied to him under the Second Amendment because these laws effectuate a complete ban on the ability of

---

[1] During the course of the Superior Court proceedings, appellant was sent to Saudi Arabia for a six month deployment with the United States Air Force and the initial trial date had to be continued.

[2] Specifically, 18 DCMR §§ 422.5 and 422.6.

[3] *See* D.C. Code §§ 22-4504 (a), -1803 (2001), D.C. Code § 7-2502.01 (2001), and D.C. Code § 7-2506.01 (a)(3) (2001), respectively. Appellant had been indicted on the completed offense of CPWL.

law-abiding nonresident citizens to carry a handgun outside of the home for purposes of legitimate self-defense in the District of Columbia.

Based on our reading of the municipal regulation on which the police relied in effectuating this seizure, we decide this case on appellant's first argument and conclude that the traffic regulation is ambiguous as to what portion of the license plate or "identification tag" can or cannot be covered, and that the regulation is vague as to whether the drafters intended to effectuate a near-complete ban on the use of ubiquitous license plate frames in the District of Columbia, where the identification information on the plate is otherwise legible and unobstructed. As a result, we apply the rule of lenity and resolve the ambiguity within the law in favor of appellant, and thus hold that there is no traffic violation if the attached license plate frame does not obscure any part of the license plate's identifying information, which does not include the state motto or nickname located at the bottom of the plate. Consequently, the police did not have a legal basis to stop appellant's vehicle and his motion to suppress should have been granted. Therefore, we reverse appellant's convictions, and remand this case for proceedings not inconsistent with this holding.

### I.    Factual Background

During the early-morning hours of February 18, 2010, at around 2:30 a.m., Officer Brandon Joseph and his partner Officer Pugh of the Metropolitan Police Department ("MPD") observed a green "Monte Carlo" traveling eastbound on the 1200 block of W Street, Northwest, Washington, D.C., with an obstructed rear license plate issued by the State of Texas. Specifically, the border of the license plate frame obscured the Texas state nickname — "Lone Star State" — engraved at the bottom of the license plate. There is no dispute that the issuing jurisdiction and identification numbers and letters on the plate were legible.[4] Believing this to constitute a traffic infraction, the officers activated their emergency equipment and pulled over the vehicle. There were two individuals inside; appellant was the driver, while another person was sitting on the passenger side.

During the course of the traffic stop, Officer Joseph observed, in plain view, a black holster for a firearm inside the vehicle, at which point appellant turned and "kind of covered it up with something, and stated [that] he worked security for a

---

[4] A photograph of the license plate was admitted in evidence, depicting a Texas license plate inside a frame advertising a Dallas car dealership. The photograph is available to us on appeal. There is no dispute that the phrase "Lone Star State" was obstructed underneath the frame.

bank." The officer asked appellant if he had his firearm on him and, in response, appellant started to behave suspiciously; he became "nervous," "broke eye contact," began to "shake," and was "kind of stuttering." When the officer asked appellant again if he had a firearm, appellant said "no." Officer Joseph then asked to search the vehicle, to which appellant granted permission, and for appellant to step outside for a protective pat down, during which time the officer noticed that appellant was wearing a bulletproof vest. Officer Pugh asked appellant a third time whether he had any weapons in the vehicle, and this time appellant answered: "[Y]es, I have a .38 in the car next to the holster." The officers thereupon discovered a fully loaded Smith & Wesson .38 caliber revolver with the "silver barrel sticking up" behind the driver's side and two additional "speed loaders and ammunition" inside the vehicle, and arrested appellant.

Appellant filed motions to suppress the handgun and ammunition and to dismiss the indictment under the Second Amendment. With regard to the motion to suppress, appellant argued that the license plate or "identification tag" fully complied with the requirements of the relevant regulation, *see* 18 DCMR § 422, thereby making the traffic stop unlawful. As to the motion to dismiss, appellant claimed, *inter alia*, that because at the time of his arrest he was not otherwise disqualified from owning a handgun — appellant was in the military, did not have

a criminal record, and had registered the same handgun in Virginia, his then-place of residence — and because it was legally impossible to obtain a license to carry a pistol outside of the home in the District of Columbia, or for a nonresident to register a handgun, the charges were unconstitutional as applied to him.[5] The government filed oppositions thereto, arguing that the obstructed plate clearly violated the District of Columbia's traffic laws, and that there was no constitutional violation because the District of Columbia allows for an individual, including a nonresident, to possess a lawfully registered firearm outside the home in certain, limited situations.[6]

Judge Robert E. Morin denied the motion to dismiss, finding "nothing unique about [the] motion." Judge Anthony C. Epstein presided over the suppression hearing. At the hearing, Officer Joseph testified as to his basis for the traffic stop and what was subsequently recovered from the vehicle. The officer

---

[5] The motion to dismiss made two other arguments that appellant now abandons on appeal. He claimed that because he was living in his vehicle at the time of his arrest, the handgun and ammunition were recovered from his "home," and therefore he could not be charged with CPWL or UA. The motion also claimed that the registration requirements do not allow for an individual to register a handgun for possession outside the home, thereby violating his constitutional rights.

[6] *See* D.C. Code §§ 22-4504.01, -4504.02 (2009 Supp.).

made clear that the sole reason for the traffic stop was the obstructed license plate.[7]

At the end of the hearing, the trial court denied the motion to suppress, concluding that the police "had a reasonable suspicion that the tag did not comply with District of Columbia law."[8]

Appellant thereafter conditionally pleaded guilty, reserving his right to appeal the motions to suppress and to dismiss. Following the plea, the trial court elaborated on its previous ruling on why the police officers had reason to believe that appellant's license plate frame violated two regulatory provisions: 18 DCMR §§ 422.5 and 422.6, respectively.[9] Specifically, the court concluded that the frame

---

[7] Officer Joseph testified that Officer Pugh ran the tags after the vehicle was stopped and discovered that the vehicle's registration had expired. The government did not, and does not, rely on the expired registration as justification for the traffic stop, and any such argument is waived. *See Rose v. United States*, 629 A.2d 526, 535 (D.C. 1993) ("It is a basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived.").

[8] The court reasoned that the officers could reasonably suspect that the license plate frame did not comply with the regulation because "just [by] eyeballing this [frame]," "it's close to a foot long." The trial court also concluded that the officers "certainly" had reasonable suspicion that "this sign or emblem [i.e., the frame] obstructed from view *any* part of the identification tags," and that there is "no dispute that some part was obscured."

[9] Section 422.5 states:

> Identification tags shall be maintained free from foreign
> materials and in a clearly legible condition. For the

(continued . . .)

was a "non-transparent material" placed on or over the tag in violation of § 422.5. The court also concluded that the frame did not fall within the exception for certain "signs" or "emblems" under § 422.6, and that appellant's frame also violated that provision for two reasons. First, the frame was "more than 24 square inches in area." Second, the frame obstructed from view "any part" of the identification tag. In coming to this conclusion, the trial court interpreted the "any part" language as "not limited to the tags' identifying numbers or letters or the jurisdiction that issued the tag." The trial court further considered § 422.8,[10] and concluded that provision "makes it even more reasonable to interpret 422.5 and 422.6 consistent with their plain meaning" because it shows that the legislature "knew how to make the restriction more limited." This appeal followed.

---

(. . . continued)

> purposes of this subsection, foreign materials shall include any non-transparent materials placed on or over the tag(s); any expired or any unauthorized decals or stickers; or any markings or attachments of any kind, except as permitted by § 422.6.

Section 422.6 states:

> No sign or emblem more than twenty-four square inches (24 in. $<2>$) in area shall be attached to any license tag bracket nor shall any sign or emblem be so located as to obstruct from view any part of the identification tags.

[10] Subsection 422.8 states: "No person shall operate a vehicle where the identification tag's identifying numbers or letters are covered with glass, plastic, or any other type of material or substance."

## II. Discussion

On appeal, appellant argues that the trial court erred in denying his motion to suppress the handgun and ammunition because the police lacked reasonable, articulable suspicion that his license plate frame violated 18 DCMR § 422. Appellant claims that the trial court's broad interpretation of the regulation, finding his license plate frame unlawful even though it did not obscure any part of the license plate's identifying information, is "contrary to the legislative history and purpose of the regulations and . . . lead[s] to absurd . . . results." The government disagrees, maintaining that the trial court's reading of §§ 422.5 and 422.6, which essentially makes it unlawful to have a license plate frame covering any portion of the license plate regardless of how insignificant the obstruction, is consistent with the plain meaning of the regulatory provisions and not "absurd." Both parties agree that no case from this jurisdiction has squarely interpreted these two regulatory provisions.

In our view, the regulatory language is not so "plain" in either breadth or purpose, and therefore we must reverse the denial of appellant's motion to suppress. Because our decision on the suppression motion is dispositive to appellant's appeal, we do not reach the question raised by appellant as to whether

an otherwise qualified law-abiding nonresident citizen has a Second Amendment right to carry a firearm outside of the home for purposes of legitimate self-defense in the District of Columbia.[11]

"In reviewing the trial court's ruling on a motion to suppress, this court 'must view the evidence in the light most favorable to the prevailing party.'" *Bennett v. United States*, 26 A.3d 745, 751 (D.C. 2011) (citation omitted). Our scope of review is limited; we defer to the trial court's findings of fact unless they are clearly erroneous, but review its legal conclusions *de novo*. *Watson v. United States*, 43 A.3d 276, 282 (D.C. 2012). Whether there was reasonable, articulable suspicion to justify a traffic stop under the Fourth Amendment is a legal conclusion. *Id.*; *see generally Jones v. United States*, 972 A.2d 821, 824-25 (D.C. 2009). As a rule, under the Fourth Amendment, the police may lawfully stop a vehicle and question its motorists upon witnessing or suspecting the commission of a traffic offense, even if the violation is minor. *Minnick v. United States*, 607 A.2d

---

[11] *See Palmer v. District of Columbia*, -- F. Supp. 2d --, No. 1:09-CV-1482, at 16 (D.D.C. July 24, 2014) (concluding that the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home is unconstitutional under "any level of scrutiny" and enjoining the government from enforcing the UF statute's limiting of firearm registrations to within the home, D.C. Code § 7-2502.02 (a)(4), and enforcing the CPWL statute, D.C. Code § 22-4504 (a), until the government adopts a licensing mechanism "consistent with the Second Amendment"); *cf. Kachalsky v. County of Westchester*, 701 F.3d 81, 99 (2d. Cir. 2012).

519, 524 (D.C. 1992). However, if the police stop a vehicle believing that "a violation of . . . law [has] occurred when the acts to which an officer points [to] as supporting probable cause [or reasonable, articulable suspicion] are not prohibited by law," *United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006), the seizure is deemed unlawful and any contraband resulting therefrom must be suppressed. *Id* at 962. This is because an officer's mistake of *law* "no matter how reasonable or understandable," *id.*, cannot provide the objective basis necessary for either probable cause or reasonable, articulable suspicion.[12] *See In re T.L.*, 996 A.2d 805, 816 (D.C. 2010).[13] Moreover, in such instances, there is no good-faith exception to the exclusionary rule. *See id.* at 817; *see also United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). In this case, resolution of appellant's motion to suppress hinges on whether the language of §§ 422.5 and 422.6 actually prohibit the license plate frame found on appellant's vehicle, or whether the regulatory language is ambiguous, which is a question we also review *de novo*. *See Sullivan v. District of Columbia*, 829 A.2d 221, 224 (D.C. 2003).

---

[12] In contrast to a mistake of *law*, when an officer stops a vehicle based on a mistake of *fact*, i.e., an officer's mistaken belief that the facts before him or her indicate what he or she correctly believes the law forbids, "we ask only whether the mistake was reasonable." *McDonald*, *supra*, 453 F.3d at 962.

[13] *Accord United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006) ("[Traffic] [s]tops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional.").

In interpreting these regulatory provisions, we keep in mind the primary rule of statutory construction "that the intent of the lawmaker is to be found in the language that he [or she] has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (citations and internal quotation marks omitted). Thus, if the statute's or regulation's language is "plain" and allows for no other meaning, we will generally look no further and give the "words used the meaning ordinarily attributed to them." *Sullivan*, *supra*, 829 A.2d at 224. However, we have previously cautioned not to "make a fetish out of plain meaning nor should [we] make a fortress out of the dictionary." *District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C. 2006). We therefore "may refuse to adhere strictly to the plain language of a statute in order to effectuate the legislative purpose as determined by a reading of the legislative history or by an examination of the statute as a whole." *Peoples Drug Stores, Inc.*, *supra*, 470 A.2d at 754 (citations and internal quotation marks omitted).

But what if a statute or regulation still leaves room for ambiguity even after other canons of statutory interpretation have been exhausted? In the criminal context at least, "[i]t is well-established that criminal statutes should be strictly construed and that ambiguities should be resolved in favor of the defendant (i.e., the Rule of Lenity)." *Belay v. District of Columbia*, 860 A.2d 365, 367 (D.C.

2004) (citations omitted). "To be sure, the rule of lenity is a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose[,] and history leave the intent of the legislature in genuine doubt." *Cullen v. United States*, 886 A.2d 870, 874 (D.C. 2005) (citation omitted).[14] Keeping in mind these principles of statutory interpretation, we turn to the issue at hand.

In this case, the trial court concluded that the police officers had reasonable, articulable suspicion to believe that appellant's license plate frame violated two traffic regulatory provisions: 18 DCMR §§ 422.5 and 422.6, which state, respectively:

---

[14] The fact that 18 DCMR § 422 is a civil traffic regulation, *see, e.g.*, *DeVita v. District of Columbia*, 74 A.3d 714, 720 (D.C. 2013), rather than an actual criminal statute, is of no moment. The rule of lenity is not so unduly restrictive in its application. *Cf. Luck v. District of Columbia*, 617 A.2d 509, 515 (D.C. 1992). In fact, the Supreme Court in *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992) (plurality opinion), explicitly applied the rule of lenity to a tax statute in a civil case because the statute had "criminal applications." Likewise, in *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003), the Eleventh Circuit applied the rule of lenity to non-criminal traffic citations which ultimately led to criminal prosecution, declining "to use the vagueness of a statute *against* a defendant." (emphasis added). Consequently, for the same reasons espoused in those cases, we also think that it is within the spirit of the law to apply the rule of lenity to civil traffic regulations because "[t]he Fourth Amendment [and, therefore, the potential for criminal prosecution] does not bar the police from stopping and questioning motorists *when they witness or suspect a violation of traffic laws, even if the offense is a minor one*." *Minnick*, *supra*, 607 A.2d at 524 (emphasis added).

**422.5** Identification tags shall be maintained free from foreign materials and in a clearly legible condition. For the purposes of this subsection, foreign materials shall include any non-transparent materials placed on or over the tag(s); any expired or any unauthorized decals or stickers; or any markings or attachments of any kind, except as permitted by § 422.6.

**422.6** No sign or emblem more than twenty-four square inches (24 in. <2>) in area shall be attached to any license tag bracket nor shall any sign or emblem be so located as to obstruct from view any part of the identification tags.

Specifically, the court found that the frame constituted a "foreign material" that was made out of non-transparent materials placed on or over the tag, in violation of § 422.5's requirement that the identification tags "be maintained free from foreign materials and in a clearly legible condition." The court also determined that the frame was not an attachment or marking permitted under § 422.6, and that the frame also violated that provision independently because it was more than twenty-four square inches in area and obstructed "any part" of the license plate. Consequently, on appeal, we are presented with essentially three questions: (1) whether the regulatory framework provides an exception for certain license plate frames; (2) whether § 422.6 provides an independent basis for a traffic violation; and (3) if not, should § 422.5 be accorded its literal reading to preclude any foreign material or attachment (which would include license plate frames) from being

placed on or over the identification tag, without regard as to whether any identifying information was actually obstructed.

Preliminarily, we agree with the government that the plain meaning of the first sentence of § 422.5 requires that all "identification tags" meet two requirements to pass muster: (1) be free from foreign materials; *and* (2) in a clearly legible condition. In other words, an "identification tag" violates the regulation if either condition is unmet.[15] This is because use of the word "and" is — absent evidence to the contrary — treated as a conjunctive, meaning that "when the conjunctive 'and' connects words, phrases[,] or clauses of a statutory sentence, they are to be considered *jointly*." *Lithium Corp. of Am., Inc. v. Town of Bessemer City*, 135 S.E.2d 574, 577 (N.C. 1964) (emphasis added); *see also Sanders v. Molla*, 985 A.2d 439, 442 (D.C. 2009) (concluding that "'and' . . . usually bears a conjunctive meaning").

---

[15] Appellant contends that the provision "free from foreign materials and in a clearly legible condition" is susceptible to two different interpretations. The first interpretation is the conjunctive reading. The second interpretation, the one that appellant espouses that this court adopt, is the novel concept that the regulation should be read as expressing a "single overall idea," i.e., free from foreign materials *that* render the license plate illegible — for example, as expressed in the idiom "trials and tribulations," or by medieval legal doublets, such as "null and void" or "full faith and credit." Appellant cites no legal doctrine or case law, and we can find none, positing that this court can interpret the conjunction "and" in a modern statute in such a fashion.

"Foreign materials" is defined under § 422.5 as including "any non-transparent materials placed on or over the tag(s); any expired or any unauthorized decals or stickers; or any markings or attachments of any kind, except as permitted by § 422.6." Thus, the provision — taken literally and as it was interpreted by the trial court — prohibits license plate frames, except those "markings or attachments" permitted under § 422.6, since a frame, by its very nature, is a non-transparent material placed *over* the license plate and traces the border *on* the plate. See *infra* page 21.

While a frame could also arguably be defined as an "attachment," if not a "marking," upon closer examination of § 422.6, we conclude that the exception for certain attachments does not, and cannot, apply to modern license plate frames. Specifically, the language of § 422.6 only excepts certain "signs or emblems" less than "twenty-four square inches" in area which do not "obstruct from view any part of the identification tags."[16] Thus, by its very language, § 422.6 precludes modern license plate frames from consideration under the exception because the

---

[16] The use of the conjunction "nor" in § 422.6 connotes that a sign or emblem fails the exception if either condition is unmet. *See, e.g.*, *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship*, 869 A.2d 329, 332 (D.C. 2005) (noting that the court will ordinarily construe words "according to their ordinary meaning").

standardized dimensions of modern day license plate frames do not meet the strictures of the provision's requirements. Since 1956, license plates in North America have been a uniform 6" by 12" or, in other words, seventy-two square inches.[17] It is unclear what, if any, modern day appurtenance § 422.6 would presently except, given its size limitation of twenty-four square inches, which appear to have no applicability to modern-day automobiles. This conclusion is reinforced by the fact that the language found in § 422.6 was first adopted on April 11, 1950, *see* D.C. Bd. of Comm'rs, Order 302, 275/34 at 4 (Apr. 11, 1950), more than two years *before* the District of Columbia adopted the current-uniform license plate size of 6" by 12" or seventy-two square inches, *see* D.C. Bd. of Comm'rs, E.D. No. 261916/14 at 1 (May 1, 1952). Thus, the language of § 422.6 excepting certain attachments does not appear to apply to modern license plate frames, and therefore, as an exception to the general rule prohibiting any foreign materials on or over the tag, is inapplicable to appellant's situation, or to any license plate frame generally.

---

[17] *See* Va. Dep't of Motor Vehicles, License Plate Study 4 (2012), *available at* http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD3832012/$file/RD383.pdf (noting that the standard size came into being following an agreement between the governments of the United States of America and Canada and automobile manufacturers, and that its purpose is to allow "for the standardization of vehicle parts across the region and encourage[] the development of new technologies and competition in license plate manufacturing").

Having concluded that there is no exception under the regulatory framework for license plate frames, our focus is on whether we should accord §§ 422.5 and 422.6 their literal meanings, where doing so would essentially amount to a ban on all license plate frames from the District of Columbia. This is because § 422.5 requires the "identification tag" to be free from any non-transparent materials or attachments, and § 422.6 precludes any appurtenances more than twenty-four square inches in area or which obstruct from view any part of the identification tag. Appellant contends that the regulatory provisions should not be read so literally because no discernable purpose would be served. Instead, he argues that this court should read the regulation as only precluding the obstruction of unique, identifying information on the tag, which would encompass the tag's identifying numbers and letters, the issuing jurisdiction, and — if applicable — registration stickers, but not the state motto or nickname, usually located at the bottom of the plate. *See, e.g.*, *State v. Hayes*, 660 P.2d 1387, 1389 (Kan. Ct. App. 1983) (concluding that the state name may be the most important part of the tag and therefore must be legible); *State v. Jacquez*, 222 P.3d 685, 689 (N.M. Ct. App. 2009) (concluding that "registration stickers" are included as part of the registration information required to be displayed on the license plate).[18] Given appellant's arguments, and

---

[18] We agree that if we were to interpret the regulation as only applying to identifying information on the tag, the state motto or nickname would be excluded

(continued . . .)

the fact that license plate frames are widely used in the District of Columbia, even though the words of these provisions may appear superficially clear, we review the legislative history and consider "alternative constructions that could be ascribed to [this] language[, which] may reveal ambiguities that the court must resolve." *Place*, *supra*, 892 A.2d at 1111 (quoting *Peoples Drug Stores, Inc.*, *supra*, 470 A.2d at 754). In so doing, we endeavor to holistically construe §§ 422.5 and 422.6 in the context of the whole regulatory framework, its historical context, and its legislative intent and purpose, *see Grayson v. AT & T Corp.*, 15 A.3d 219, 237-38 (D.C. 2011) (en banc) ("'Statutory interpretation is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.'" (quoting *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993)), because "[t]he meaning — or ambiguity — of certain words or phrases may only become evident when

---

(. . . continued)

from that definition. As appellant points out, some state license plates do not have any mottos or slogans at all. *See, e.g.*, Wyo. Dep't of Transp., License Plates/Vehicle Registration, http://www.dot.state.wy.us/home/titles_plates_registration.html (last visited Aug. 13, 2014). More significantly, the District of Columbia itself does not appear to convey much importance to the state motto or nickname portion of the license plate in furthering any legitimate purpose, because our own Department of Motor Vehicles explicitly allows individuals to procure a District of Columbia license plate that omits the motto "Taxation without Representation." *See* Taxation without Representation — Vehicle Tags, http://dmv.dc.gov/service/taxation-without-representation-vehicle-tags (last visited Aug. 13, 2014).

placed in context[,]" *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (citation and internal quotation marks omitted). Taking this approach, we conclude that §§ 422.5 and 422.6 are ambiguous and each provision is susceptible to two different interpretations. While a literal interpretation of the provisions — resulting in a total ban of all license plate frames — is, of course, possible, we conclude that these provisions can also rationally be interpreted as only prohibiting those materials or attachments that obstruct the *identifying information* on the tag itself.

With regard to § 422.6, when read in isolation and literally, the provision, which prohibits any "sign or emblem more than twenty-four square inches . . . in area [to] be attached to any license tag bracket" or "any sign or emblem . . . so located as to obstruct from view any part of the identification tags[,]" appears to provide an independent basis for a traffic violation; in other words, the police may stop a vehicle for a license plate frame that directly violates the requirements of § 422.6. This was how the trial court read the regulatory provision when it concluded that appellant, in addition to violating § 422.5, also violated both requirements of § 422.6. Such an interpretation is not the only credible reading of the provision when considered "in context" of the surrounding regulatory provisions. *See, e.g.*, *Tippett*, *supra*, 10 A.3d at 1127. Specifically, § 422.5 states

that all identification tags must be free from "foreign materials" and be clearly legible. That provision then goes on to define "foreign materials" as, *inter alia*, "any markings or attachments of any kind, except as *permitted* by § 422.6." (emphasis added). When §§ 422.5 and 422.6 are read in conjunction, § 422.6 could also be interpreted as simply providing a definition of what attachments are permitted (or not permitted as the case may be) under § 422.5's general prohibition of "foreign materials." Any attachment that does not meet § 422.6's requirements thereby directly violates § 422.5's general prohibition against "foreign materials," not § 422.6. In other words, § 422.6 is merely *defining* what is an excepted attachment, and does not provide an independent basis for a traffic violation. *See, e.g.*, *Grayson*, *supra*, 15 A.3d at 238. Given these two competing interpretations, we construe § 422.6 in conformance with the rule of lenity and conclude that it does not provide an independent basis for a traffic stop. Having resolved this issue, the validity of appellant's traffic stop hinges exclusively on our interpretation of "identification tag" under § 422.5.

We conclude that the term "identification tag" under § 422.5 is ambiguous and open to two competing interpretations; the literal meaning — i.e., the whole physical plate itself — or referring only to the *identifying information* on the tag. To start, the plain language of the requirements of § 422.5 are themselves

ambiguous and open to the above two competing definitions. In addition to requiring that identification tags be "free from foreign materials," they must also be in a "clearly legible condition." Although these are two separate requirements that the tag must satisfy, see *supra* page 15, the provision's explicit concern with the *legibility* of the identification tag supports the argument that the provision is more concerned with keeping the identifying information on the tag unobstructed by foreign materials, rather than the physical plate itself. This alternative view is further supported by the historical context from which the language of the provision evolved. *See, e.g.*, *Loving v. I.R.S.*, 742 F.3d 1013, 1021-22 (D.C. Cir. 2014) (noting that the "traditional tools of statutory interpretation" include the statute's "text, *history*, structure, and *context*") (emphasis added). The progenitor to the challenged language dates back to at least 1925, when the District of Columbia's traffic regulations specified that "identification tags and the *license numbers thereon* shall be *always plainly visible* and shall be kept in a clean and undamaged condition." D.C. Traffic and Motor Vehicle Regs. Art. 7 § 8 (a) (1929) (emphasis added). This precursor provision, from which the current provision came about (in approximately 1949, *see* D.C. Traffic and Motor Vehicle Regs. § 32 (b) (amended 1949)), demonstrates that the drafters appeared chiefly concerned with the legibility of the tag's identifying numbers.

A review of § 422 in its entirety further reveals latent ambiguities with a literal interpretation of § 422.5. Specifically, § 422.8 states: "No person shall operate a vehicle where the *identification tag's identifying numbers or letters* are covered with glass, plastic, or any other type of material or substance." (emphasis added). By declaring the tag's identifying numbers or letters as the relevant portions to be maintained, the intent behind § 422.8, i.e., keeping the identifying information legible, is incongruent with a literal reading of § 422.5 that the *entire* tag, and not just the identifying information on the tag, be free from obstruction by foreign materials.[19] We think that the language of § 422.8, along with the "clearly legible condition" language found in § 422.5, injects fundamental ambiguity into the question of whether the regulation truly intended to prohibit materials that obstruct portions of the license plate that do not contain any identifying information.

---

[19] Although the trial court is not incorrect to observe that the two differing provisions (§ 422.5 versus § 422.8) could be read as demonstrating that the drafters knew how to more narrowly restrict the obstruction, given the whole mosaic of the history and purpose of the regulation, it is not dispositive to our conclusion that § 422.5 is nonetheless ambiguous. *See Loving*, *supra*, 742 F.3d at 1021-22. Further, we disagree with the trial court's conclusion that only the restricted interpretation of §§ 422.5 and 422.6, prohibiting attachments that only obscure the identifying information, would make § 422.8 a redundant provision. In our view, any perceived violation of § 422.8 would constitute a § 422.5 violation under either a plain meaning interpretation or under the more restrictive interpretation put forward by appellant.

Lastly, a literal reading of § 422.5, serves no legislative purpose which we can discern. *See Peoples Drug Stores, Inc.*, *supra*, 470 A.2d at 754 (citations omitted) (concluding that this court "may refuse to adhere strictly to the plain language of a statute in order to effectuate the legislative purpose) (citations and internal quotation marks omitted). The relevant regulation, 18 DCMR § 422, was enacted pursuant to Title 50, Chapter 15, of the District of Columbia Code. *See* D.C. Code § 50-1501.05 (2012 Repl.) (stating that "the Council of the District of Columbia, under the District of Columbia Traffic Act, 1925, as amended, . . . make[s] rules and regulations . . . *with respect to the registration of motor vehicles*." (emphasis added)); D.C. Code § 50-1501.02 (h) (2012 Repl.) ("The Mayor may amend Chapters 4 and 5 of Title 18 of the District of Columbia Municipal Regulations ("DCMR")[.]"). This regulation, along with its related sections, was promulgated in large part under Title 50, Chapter 15 to "facilitate the *identification* and the *regulation* of motor vehicles . . . operated in the District of Columbia." D.C. Code § 50-1501.02 (f) (emphasis added); *see also* 50 Stat. 680, ch. 690, title IV, § 2 (e) (1937) (identifying that same legislative purpose since the statute was first enacted in 1937). For example, to further this identification and regulatory purpose, pursuant to Title 18 of the DCMR, the Mayor may promulgate rules punishing individuals that provide, obtain, or use fraudulent identification tags. *See* D.C. Code § 50-1501.02 (g). This legislative intent is fully satisfied by

interpreting § 422.5 as prohibiting *only* the obstruction of identifying information on the tag by foreign materials, rather than the entire tag itself; in fact, we are not persuaded that a literal interpretation, prohibiting the placement of *any* foreign material over the tag, regardless of whether it obstructs relevant information, furthers any legitimate purpose and would not instead border on unreasonable. *See Stein v. United States*, 532 A.2d 641, 649 (D.C. 1987) (Mack, J., concurring in part, dissenting in part) ("It is a 'well-established principle of statutory interpretation that the law favors rational and sensible construction' . . . . [U]nreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." (quoting 2A Sutherland on Statutory Construction, § 45.12 at 54 (4th ed. 1985)).

Other jurisdictions have similar laws intended to aid in the identification of vehicles by citizens or law enforcement, many of which, it appears, are somewhat more specific as to what portion of the license plate has to remain unobstructed, or whether the full plate has to be clearly visible at all times for identification purposes.[20] *See State v. Harrison*, 846 N.W.2d 362, 369 (Iowa 2014) ("An

---

[20] *See generally* Ga. Code Ann. § 40-2-41 (2000) ("No license plate shall be covered with any material unless the material is colorless and transparent. No

(continued . . .)

important purpose of [the statute] along with related sections, is to allow police and citizens to identify vehicles."); *State v. Brooks*, No. 2005-L-200, 2007 WL 214406, at \*6 (Ohio Ct. App. Jan. 26, 2007) ("The intent of the statute is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes."). In reading traffic laws premised on factual situations similar to the one here, courts in other jurisdictions have determined that certain unique identifying information on the license plate, such as the issuing state, the registration number, and even the "county name," is helpful in effectuating the identification of vehicles. *See Harrison*, *supra*, 846 N.W.2d at 369 ("Although the county name is unnecessary to conduct a license plate check, it can be useful to help law enforcement track down a vehicle driven by someone who has been observed breaking the law."); *Hayes*, *supra*, 660 P.2d at 1389 (identifying the name of the issuing jurisdiction as critical information);

---

(. . . continued)

apparatus that obstructs or hinders *the clear display and legibility* of a license plate shall be attached to the rear of any motor vehicle required to be registered in the state." (emphasis added)); Iowa Code § 321.37 (3) (1997) ("It is unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit *full view of all numerals and letters* printed on the registration plate." (emphasis added)); Iowa Code § 321.166 (2) (2010 Supp.) ("Every registration plate issued by the county treasurer shall display the name of the county . . . ."); N.J. Stat. Ann. § 39:3-33 (West 1989) ("No person shall drive a motor vehicle which has a license plate frame or identification marker holder that conceals or otherwise obscures any part of *any marking imprinted* upon the vehicle's registration plate . . . ." (emphasis added))

*Jacquez, supra*, 222 P.3d at 688-89 (concluding that the registration sticker provides the officers with important registration information). We do not see how, nor has the government cited any, legitimate law enforcement and regulatory purposes inherently furthered by prohibiting *any* obstruction of the identification tag by a foreign material, thereby amounting to a near complete ban on license plate frames, as opposed to only prohibiting the obstruction of identifying information on the tag. *Cf. Abbott Labs. v. Young*, 287 U.S. App. D.C. 190, 194, 920 F.2d 984, 988 (1990) ("The 'reasonableness' of [a statutory] construction depends on the construction's 'fit' with the statutory language as well as its conformity to statutory *purposes*." (emphasis added)).

In fact, in at least one case, *Brooks*, the Court of Appeals of Ohio similarly refused to construe Ohio's license plate statute as prohibiting *any* obstruction, counter to the plain language. No. 2005-L-200, 2007 WL 214406, at *6. The Ohio license plate statute provided that "[a]ll license plates . . . shall not be covered by *any* material that obstructs their visibility." Ohio Rev. Code Ann. § 4503.21 (West 2002) (emphasis added). The purpose of the Ohio statute, like ours, is to "require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *Id.* In *Brooks*, a police officer stopped Brooks upon observing that the rear license plate bracket or

frame on Brooks' vehicle "made it impossible to see the county[,] validation, [and] the expiration date on the license plate." *Brooks*, *supra*, No. 2005-L-200, 2007 WL 214406, at *6. On appeal, the Ohio appeals court disagreed with the government's contention that the word "any" meant that the statute literally prohibited *any* obstruction of the license plate, instead construing the statute by its "common sense definition" as meaning only reading the letters and numbers on the license plate, which were not affected in that case. *Id.* at *6. We find the Ohio appeals court's reasoning persuasive in reaching our ultimate conclusion here that the regulation is ambiguous and could rationally be interpreted as prohibiting only the obstruction of the unique, identifying information on the tag.

The government cites to several jurisdictions that have statutes prohibiting the obstruction of portions of the license plate other than the unique identifying information, including the state motto or nickname.[21] However, a key difference

---

[21] For example, in *State v. Johnson*, 219 S.W.3d 386, 387-88 (Tex. App. Ct. 2007), the Texas court construed Tex. Transp. Code § 502.409 (a)(7)(B), which stated: "A person commits an offense if the person attaches to or displays on a motor vehicle a number plate or registration insignia that . . . has a coating, covering, or protective material that: . . . alters or obscures the letters or numbers on the plate, the color of the plate, or another original design feature of the plate," as prohibiting the obstruction of the Texas nickname located at the bottom of the license plate because it "plainly constitute[s] other original design features of the plate[.]" Moreover, the Texas court concluded that the intention of the legislature was to prohibit the obstruction of any lettering on the license plate, because the

(continued . . .)

between the examples cited by the government and the regulation in this case is that those statutes more precisely state which portions of the license plate can or cannot be obstructed. Additionally, with the government's cited examples, the legislative intent is more clearly evinced. Finally, none of those examples included, or at least articulated, potentially inconsistent language, like the inconsistency between the language in § 422.5 versus the language in § 422.8. See *supra* page 23. While the Council of the District of Columbia ("Council") could certainly enact legislation to prohibit *any* obstruction of the license plate, absent clear indication of the legislature's intent to do so and with the latent ambiguities that we observe with the regulation, we are hesitant to interpret the ambiguous language in the provision at issue here so broadly as to effectuate a

---

(. . . continued)

statute was revised in response to a Fifth Circuit decision, which concluded that a motorist did not violate the Texas statute when the motorist's license plate frame obscured the name of the issuing state. *Id.* at 387. Further, New Jersey statute N.J. Stat. Ann. § 39:3-33 states: "No person shall drive a motor vehicle which has a license plate frame or identification marker holder that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate." This language would seem to also prohibit the obstruction of the state nickname or motto because such lettering would clearly be considered a marking imprinted on the license plate.

ban on virtually all license plate frames, even those which do not obstruct identifying information.[22]

---

[22] The government cites to a few additional cases that we find inapposite or distinguishable. In *State v. Pena*, 988 So.2d 841, 846-47 (La. Ct. App. 2008), the traffic stop was premised on the top and bottom portions of the license plate being partially obstructed, the windows being tinted, and the defendant not wearing a seat belt. Because there were three bases to stop the vehicle, the fact that the court determined that the license plate was partially obstructed in violation of then-Louisiana statute, *see* La. Rev. Stat. Ann. § 47:507 (2001) (requiring license plates to be "maintained free from foreign materials and in a condition to be clearly legible"), was not critical to the trial court's decision to uphold the seizure. *See, e.g.*, *Parker v. K & L Gates, LLP*, 76 A.3d 859, 873 (D.C. 2013) ("[F]or purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that — as this court and others have repeatedly held — are 'necessary' to explain the outcome; other observations are dicta."). The same was true in *United States v. Coleman*, No. 11-CR-30150-WDS, 2013 WL 837944, at *5 (S.D. Ill. Mar. 6, 2013), where the court concluded that the defendant's license plate frame and ball hitch obstructed the county name in violation of then-Illinois law, *see* 625 Ill. Comp. Stat. 5/3-413 (2013 Supp.) (stating that license plate "shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate"), on the basis that "[t]he language of the statute does not call for any particular degree of obstruction[,]" but also concluded that the traffic stop was reasonable because the defendant failed to maintain his vehicle in one lane of traffic. Lastly, *Hinojosa v. State*, 319 S.W.3d 258, 262 (Ark. 2009), pertained to the obstruction of the name of the issuing jurisdiction on the license plate, which, as we have already stated, is important *identifying* information on the tag. Further, the statute in question in *Hinojosa* evidenced a far clearer intent on the part of the drafters. *See* Ark. Code Ann. § 27-14-716 (c) (West 2001) (prohibiting "[p]lacing any type of *cover* over a license plate which makes the license plate *more difficult to read*." (emphasis added). As we stated above, we take no issue with the Council's authority to enact laws prohibiting license plate frames, however, the language or intention must be made clear. In any event, these three cases would not defeat the possibility of an alternative reading of the District of Columbia's regulation for the reasons stated above.

In short, viewing the statutory scheme holistically, we conclude that §§ 422.5 and 422.6 are ambiguous and subject to differing interpretations. The government reasons that the plain language of the regulatory provisions at issue prohibits the obstruction of any part of the license plate. However, the historical, legislative, and other circumstances weigh against such a literal reading of §§ 422.5 and 422.6, and add support to the alternative conclusion that only the identifying information on the license plate must remain unobstructed. Specifically, we conclude that it is also reasonable to interpret § 422.6 as merely defining an excepted attachment under § 422.5 — which we conclude does not encompass license plate frames — rather than as an independent basis for a traffic violation. Further, we conclude that it is likewise reasonable to interpret § 422.5 as not precluding foreign materials or attachments from being placed on or over portions of the license plate that do not otherwise obscure critical identifying information on the plate, such as the identifying numbers or letters, the issuing jurisdiction, and any other critical identifying information, but not the state motto or nickname usually found on the bottom of the plate. A literal interpretation of §§ 422.5 and 422.6 would impact countless individuals who drive in the District of Columbia and who have license plate frames on their vehicles. We apply the rule of lenity in a situation like this where the language of the regulation is ambiguous and two alternative interpretations are equally possible. Although it is unclear

which interpretation was actually intended by the drafters, given these two fundamentally different readings of the regulation, we resolve the ambiguity in favor of appellant. *See Belay*, *supra*, 860 A.2d at 367 (noting that criminal statutes, or statutes with criminal application, should be strictly construed and ambiguities resolved in favor of the defendant). The Council of the District of Columbia is, of course, empowered to enact legislation banning all license plate frames if it so chooses. However, such legislative intent must be more clear and explicit. *See, e.g.*, *Cullen*, *supra*, 886 A.2d at 874. Consequently, we hold that the police officers made a mistake of law by stopping appellant's vehicle, believing that the vehicle's license plate frame violated §§ 422.5 and/or 422.6, when the plate's critical identifying information was clearly legible and the license plate frame only obstructed the Texas state nickname on the bottom of the plate. Accordingly, because there was no valid basis for the traffic stop, the handgun and ammunition found in appellant's vehicle must be suppressed.

## III.  Conclusion

We hold that the trial court erred in denying the motion to suppress because the police committed a mistake of law when they effectuated a traffic stop of appellant's vehicle based on their observation that appellant's license plate frame

obscured the Texas state nickname found on the bottom of the license plate. Since we hold in favor of appellant on the motion to suppress, we need not address the Second Amendment issue raised by appellant. Accordingly, the convictions on appeal are reversed and the case is remanded for proceedings not inconsistent with this decision.

*So ordered.*