*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CM-1742 & 12-CM-1743

KIM E. SMITH, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CMD-4599-12 & CMD-6355-12)

(Hon. Marisa Demeo, Trial Judge)

(Argued May 20, 2014                          Decided December 4, 2014)

*Cynthia Nordone* for appellant.

*Jay Apperson*, Assistant United States Attorney, with whom *Ronald Machen Jr.*, United States Attorney, and *John P. Mannarino* and *Elizabeth Trosman*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  The issue on appeal is whether the

exclusionary rule applies to "derivative evidence" resulting from an arrest warrant

that was premised upon tainted evidence obtained during an illegal traffic stop.[1]

---

[1] This is a consolidated appeal of two separate criminal cases pertaining to appellant. The first case need not be addressed in detail, for reasons explained below. In the second case, which we address herein, appellant was charged with: two counts of possession of marijuana, in violation of D.C. Code § 48-904.01 (d) (2012 Repl.), and two counts of possession of drug paraphernalia, in violation of D.C. Code § 48-1103 (a) (2012 Repl.). In a consolidated motion to suppress and bench trial, the Honorable Marisa Demeo granted the motion to suppress on one count of possession of marijuana and one count of possession of drug paraphernalia and acquitted appellant of those counts but found appellant guilty of the remaining counts.

Appellant's first case pertains to a separate incident on March 14, 2012 and we dispose appellant's resulting claim summarily. Although appellant failed to file a motion to suppress prior to trial with regard to evidence recovered from his person on that date, he argues that this court should nonetheless consider his claim that the trial court erred in admitting the alcohol, drugs, and drug paraphernalia evidence at trial, because the police lacked probable cause to search or arrest him. We disagree and conclude that appellant waived this claim by failing to file a pre-trial motion to suppress. Under D.C. Code § 23-104 (a)(2) (2012 Repl.), "[a] motion . . . to suppress evidence shall be made *before* trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." (Emphasis added). *See also Artis v. United States*, 802 A.2d 959, 965 (D.C. 2002). Similarly, Super. Ct. Crim. R. 12 (d) requires that any motion to suppress be made *prior to* trial and "[f]ailure . . . to make requests which must be made prior to trial . . . shall constitute *waiver* thereof," unless a defendant can show "good cause for a failure to do so." *Olafisoye v. United States*, 857 A.2d 1078, 1085 (D.C. 2004) (emphasis added) (citations omitted).

Appellant has not shown any "good cause" for failing to bring his claim in a motion to suppress. *Id.* If anything, appellant's actions at trial run contrary to his argument. When the government introduced the recovered contraband evidence and a chemical laboratory report confirming the presence of marijuana at trial, appellant's trial counsel stated that he had "no objection." Given that appellant's trial counsel failed to object to the evidence being admitted at trial, appellant cannot now challenge the admission of the same evidence on appeal. *See Brown v. United States*, 627 A.2d 499, 508 (D.C. 1993) (barring appellant's claim of error

(continued…)

We hold that where an officer's mistake of law leads to a warrant premised on tainted evidence, derivative evidence obtained pursuant to that warrant must be excluded, unless there is an independent source for the evidence or sufficient attenuation to "purge the taint." The traffic stop at issue was premised on a "mistake of law," namely, that a license plate frame partially covering the District of Columbia motto on a license plate violated a municipal traffic regulation when no such violation actually occurred. *See Whitfield v. United States*, 99 A.3d 650, 652 (D.C. 2014). A mistake of law cannot provide the objective basis for reasonable suspicion or probable cause and therefore cannot support a valid warrant. *See In re T.L.*, 996 A.2d 805, 816 (D.C. 2010). Accordingly, because the record does not demonstrate that the officer would have come upon the derivative evidence at issue in the absence of the unlawful traffic stop and there was no independent source or other attenuation to purge the taint of the initial illegality, the exclusionary rule applies and the derivative evidence must be suppressed. *See Murray v. United States*, 487 U.S. 533, 536-37 (1988).

---

(…continued)
because "a defendant may not take one position at trial and a contradictory position on appeal").

## I.     Factual Background

### A. The Incident

On March 16-17, 2012, Officers Cartwright and Leveque of the Metropolitan Police Department ("MPD") were patrolling for drug activity when Officer Cartwright observed appellant driving northbound on 14th Street, N.W., Washington, D.C.   Officer Cartwright specifically noticed that a portion of appellant's license plate — the District of Columbia motto "Taxation Without Representation" — was obstructed by the license plate frame, even though the license plate number and issuing jurisdiction, the District of Columbia, were unobstructed.  Believing that this obstruction violated District of Columbia traffic laws,[2] he initiated a traffic stop with the assistance of four other officers.  Officer Cartwright previously initiated "many" similar traffic stops on other cars with license plate frames covering the "Taxation Without Representation" portion of the license plate, even though he admitted that he did not pull over every car with a license plate frame that obstructed the District of Columbia motto.[3]  When Officer

---

[2]  Specifically, 18 DCMR §§ 422.5 and 422.6.

[3]   When further pressed as to why Officer Cartwright chose to pull over appellant, particularly given his inconsistent practice with regard to this type of

(continued…)

Cartwright explained to appellant the reason for the stop and asked him for his license and registration, appellant replied that he had no license, at which point Officer Cartwright asked appellant to step out of the vehicle. An accompanying officer smelled marijuana coming from appellant and proceeded to search him, finding a ziplock bag containing small "zips" and a cigarette box with a hand-rolled marijuana cigar in appellant's jacket. Additionally, a search of the car revealed a clear bag containing a green leafy substance, later confirmed to be marijuana, underneath the driver's seat.

The officers did not arrest appellant at the scene because MPD had instructed them to apply for arrest warrants for misdemeanor offenses. Subsequently, Officer Leveque applied for an arrest warrant, which was granted, based on an affidavit describing the basis for the initial traffic stop, as well as the drugs and drug paraphernalia discovered on appellant and in his car. The affidavit stated that Officer Cartwright pulled over appellant's car because "[t]he tags were obstructed by a black license plate frame."

---

(…continued)

infraction, he answered: "Well, sir, we also had — if I recall correctly, there was some information regarding Mr. Smith" that he later clarified meant he knew of appellant through another officer in the office.

On April 11, 2012, Officers Cartwright and Leveque, accompanied by Officer James, saw appellant at a Starbucks located at 13th and U St., N.W., and arrested him pursuant to the arrest warrant. While arresting him, the officers recovered additional crushed marijuana from the ground, which appellant had attempted to destroy, and a "full green zip with [marijuana] in it" that was on the ground by his feet, as well as "a large clear zip containing multiple green zips" from his jacket pocket during a subsequent search incident to arrest.

## B. The Motion to Suppress

Appellant outlined his arguments in support of excluding the evidence in his written motion to suppress submitted on October 1, 2012, and during a joint motion to suppress hearing and bench trial on October 3, 2012, during which he introduced four photographs of his framed license plate. Specifically, appellant claimed that because the underlying stop was illegal under the relevant District of Columbia regulations — given that appellant's license plate, plate number, "date sticker," and "issuing jurisdiction" were not obstructed — all of the evidence recovered during the search of appellant's person and car on March 16-17, 2012, as well as the evidence derived from those events, recovered pursuant to appellant's arrest on April 11, 2012, should be excluded.

The trial court addressed the motion to suppress issue first, reviewing the relevant regulations that applied to the traffic stop, 18 DCMR §§ 422.5 and 422.6,[4] despite not having received briefing from the government on the issue. The court determined that § 422.5 only concerned information relevant to and important for "law enforcement concern[s]" that must be maintained "free from foreign materials" and "in a clearly legible condition," including the license plate, identification tag, and window sticker identifying the locality. Based on the defense's photographs, the court noted that only the "Taxation Without Representation" portion of the tag was significantly obstructed, and that it was "in no way . . . related in any manner to any type of law enforcement concern. Thus,

---

[4] 18 DCMR §§ 422.5 and 422.6 state, respectively:

> **422.5** Identification tags shall be maintained *free from foreign materials and in a clearly legible condition*. For the purposes of this subsection, foreign materials shall include *any non-transparent materials placed on or over the tag(s)*; any expired or any unauthorized decals or stickers; *or any markings or attachments of any kind, except as permitted by § 422.6.*

> **422.6** No sign or emblem more than twenty-four square inches (24 in. <2>) in area shall be attached to any license tag bracket nor shall any sign or emblem be so located as to obstruct from view any part of the identification tags.

(Emphasis added).

the trial court did not "find that [the stop] was a legitimate traffic stop" and suppressed the evidence recovered from appellant and his car during the March 16, 2012 stop. Accordingly, the trial court granted appellant's motion for judgment of acquittal with respect to those counts, *see supra* note 1.[5]

However, the trial court declined to suppress the additional drugs and paraphernalia recovered from appellant on April 11, 2012 pursuant to the arrest warrant because the latter events presented "a different scenario" altogether, given that the officers arrested appellant based on a "valid" arrest warrant. Specifically, the trial court credited Officer Cartwright's testimony that he knew Officer Leveque had applied for and obtained an arrest warrant for appellant by the time the officers saw appellant on April 11, 2012. Consequently, because the officers arrested appellant based on a validly authorized arrest warrant, the trial court reasoned that the only available challenge was to the validity of the affidavit itself, based on "intentional or reckless misrepresentations or omissions of material fact" under *Franks v. Delaware*[, 438 U.S. 154, 171 (1978)]. Finding no such grounds, the trial court concluded that the "arrest warrant remain[ed] . . . valid," and the

---

[5] The trial court noted that it wanted to be "clear . . . [that it didn't] think that the officer was trying to do something that was illegal, because there is some obstruction and he knew there was . . . a law that prevents the obstruction of license plates," which he discussed with the court.

police did not violate appellant's Fourth Amendment rights. Accordingly, the trial court found appellant guilty of the charges (Counts 2 and 3), *see supra* note 1, and this appeal followed.

## II. Discussion

Appellant argues on appeal that the trial court erred by failing to exclude the drug and drug paraphernalia evidence recovered by the police during appellant's arrest and search on April 11, 2012. Appellant contends that because the trial court determined that the initial traffic stop was illegal and granted his motion to suppress the evidence recovered from that stop, the evidence later recovered incident to his arrest on April 11, 2012 should also have been suppressed under *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963) as derivative of the initial traffic stop.[6] The government counters that the *Leon* good faith exception applies here because the exception is intended to prevent exclusion of evidence where officers reasonably rely on a subsequently invalidated arrest warrant and the facts surrounding the initial traffic stop are "close enough to the line of validity to make

_____

[6] Appellant clarified at oral argument that the *Leon* good faith exception to the exclusionary rule should not apply to his case because the affidavit supporting appellant's arrest warrant was itself tainted by evidence obtained in violation of the Fourth Amendment, and thus *Wong Sun*'s rule requiring suppression of the evidence governs instead.

[the officers'] belief" in the warrant's validity "objectively reasonable," citing *United States v. McClain*, 444 F.3d 556, 565–66 (6th Cir. 2005) and *United States v. Fletcher*, 91 F.3d 48, 52 (8th Cir. 1996).

This court reviews the evidence underlying the trial court's ruling on a motion to suppress in the light most favorable to the prevailing party, *see Bennett v. United States*, 26 A.3d 745, 751 (D.C. 2011), deferring to the trial court's findings of fact unless they are clearly erroneous, but reviewing its legal conclusions *de novo*. *Watson v. United States*, 43 A.3d 276, 282 (D.C. 2012). Whether police had reasonable, articulable suspicion or probable cause to justify a traffic stop under the Fourth Amendment is a legal question. *Id.*; *see generally Jones v. United States*, 972 A.2d 821, 824-25 (D.C. 2009). Police may lawfully stop a vehicle and question a motorist upon witnessing or suspecting the commission of a traffic offense, even if the violation is minor. *Minnick v. United States*, 607 A.2d 519, 524 (D.C. 1992). However, an officer's suspicion that a violation has occurred is not reasonable when the acts that make up the supposed traffic offense are not actually prohibited by law, *see United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006), because an officer's mistake of law, "no matter how reasonable or understandable," cannot provide the objective basis for

reasonable, articulable suspicion or probable cause,[7] *see In re T.L., supra*, 996 A.2d at 816.

### A. *Whether the Initial Traffic Stop Was Lawful*

Our recently-released opinion in *Whitfield* makes clear that the initial traffic stop in this case was not premised on a violation of the law because an obstructed license plate motto does not violate the traffic regulations at issue, namely 18 DCMR §§ 422.5 and 422.6. *See supra*, 99 A.3d 650. *Whitfield* involved a traffic stop premised on a license plate obstruction similar to that in the present case, requiring us to interpret these traffic regulations. *Id.* at 652. Interpreting the regulatory provisions at issue, we determined that they are "ambiguous and subject to differing interpretations,"[8] and that the "historical, legislative, and other

---

[7] "In contrast to a mistake of *law*, when an officer stops a vehicle based on a mistake of *fact*, i.e., an officer's mistaken belief that the facts before him or her indicate what he or she correctly believes the law forbids, 'we ask only whether the mistake was reasonable.'" *Whitfield, supra*, 99 A.3d at 655 n.12 (citing *McDonald, supra*, 453 F.3d at 962).

[8] Specifically, that "the term 'identification tag' under § 422.5 is ambiguous and open to two competing interpretations; the literal meaning — i.e., the whole physical plate itself — or referring only to the *identifying information* on the tag[,]" and that the preclusion in § 422.6 on "appurtenances more than twenty-four square inches in area or which obstruct from view any part of the identification tag" could be understood as defining an exception to § 422.5's general prohibition

(continued…)

circumstances weigh against" reading the provisions literally to "prohibit[] the obstruction of any part of the license plate." *Id.* at 664. Applying the rule of lenity to resolve the ambiguous language in favor of Whitfield, we held that § 422.5 does not preclude "foreign materials or attachments from being placed on or over portions of the license plate that do not otherwise obscure critical identifying information on the plate." *Id.* "Identifying information" includes "numbers or letters, the issuing jurisdiction, and any other critical identifying information," but does not include "the state motto or nickname usually found on the bottom of the plate." *Id.* Furthermore, we held that § 422.6 "merely defin[es] an excepted attachment under § 422.5 — which we conclude does not encompass license plate frames" and does not provide "an independent basis for a traffic violation." *Id.* Accordingly, the police officers in *Whitfield* "made a mistake of law by stopping [his] vehicle, believing that the vehicle's license plate frame violated §§ 422.5 and/or 422.6" when "identifying information" was clearly legible and only the Texas state nickname was obstructed. *Id.*

---

(…continued)
on "foreign materials," or as "an independent basis for a traffic violation." *Whitfield, supra*, 99 A.3d at 659-60.

Based on *Whitfield's* holding and interpretation of the regulations at issue, the police officers in the present case had no lawful basis to stop appellant because his license plate frame similarly did not obscure any "identifying information" on the license plate. *See id.* at 664. Officer Cartwright mistakenly relied on the fact that the "Taxation Without Representation" portion of appellant's license plate was partially obstructed to conclude that he had probable cause to stop appellant. Such mistakes of law, even when reasonable, "cannot provide the objective basis for reasonable suspicion or probable cause needed to justify a search or seizure [and] the exclusionary rule is well-tailored to hold [law enforcement] accountable for their mistakes." *In re T.L.*, 996 A.2d at 816-17 (citations omitted); *see also McDonald, supra*, 453 F.3d at 961. Accordingly, we now assess how this mistake of law affects the admissibility of the derivative evidence recovered incident to appellant's arrest.

### B. Whether the Exclusionary Rule Applies

Appellant contends that the derivative evidence obtained pursuant to the tainted arrest warrant must be excluded simply because there was no "unattenuated causation" to support the arrest warrant. In other words, because the evidence was not acquired from an independent source "sufficiently distinguishable to . . . purge[

the] primary taint," *Wong Sun, supra*, 371 U.S. at 488, it should be excluded as an "exploitation" of the illegal arrest warrant. We agree.

The exclusionary rule prohibits the use in prosecution of evidence obtained in violation of a suspect's Fourth Amendment rights, when exclusion will discourage future misconduct on the part of law enforcement. *See Leon, supra*, 468 U.S. at 906. The rule not only excludes evidence that is the *primary* result of the violation, "but also prohibits the introduction of *derivative* evidence . . . that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray, supra*, 487 U.S. at 536-37 (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939); *accord Wong Sun, supra*, 371 U.S. at 484-85 (excluding evidence that is the "fruit" of unlawful police action, including "indirect . . . and direct products of such invasions").

Where a sufficiently attenuated or independent source for the tainted evidence exists, however, exclusion is not appropriate, as doing so "would put the police in a worse position than they would have been absent any error or violation." *Id.* at 541 (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)). In

*Murray*, federal agents unlawfully entered a warehouse and discovered large quantities of marijuana, then obtained a search warrant for the warehouse without revealing their prior warrantless entry, pursuant to which they seized the marijuana. *Id*. at 535-36. The Supreme Court held that that where "a later, lawful seizure is genuinely independent of an earlier, tainted one," the independent source doctrine applies to prevent exclusion. *Id.* at 542. However, the doctrine would not apply to prevent exclusion "if the agent's decision to seek a warrant was prompted by what they had seen during the initial [unlawful] entry, or if information obtained during that entry was presented to the Magistrate and affected [his or her] decision to issue the warrant." *Id.* at 541-42.

Here, evidence obtained pursuant to an unlawful action on the part of law enforcement formed the sole basis for the arrest warrant. The record does not demonstrate that the officers would have come upon the derivative evidence obtained on appellant's person pursuant to the tainted arrest warrant in the absence of the unlawful traffic stop, and there was no intervening circumstance or other attenuation to purge the taint of the initial illegality. *See Murray, supra*, 487 U.S.

at 536-47.[9]  Accordingly, the derivative evidence must also be excluded.  *Id.*  The

trial court erred by denying appellant's motion to suppress this evidence.

### III.      Conclusion

The traffic stop at issue was premised on a "mistake of law" that cannot

provide the objective basis for reasonable suspicion or probable cause and

therefore cannot support a valid warrant.  Because there was no independent source

or other attenuation to purge the taint of the initial illegality, the exclusionary rule

applies to suppress the derivative evidence.  We hereby reverse the partial denial of

---

[9] We need not determine whether Officer Cartwright's actions were "close enough to the line of validity" based on his good faith attempt to comply with the traffic regulation, as the government suggests, such that the good faith exception to the exclusionary rule applies in this case.  *See Leon, supra*, at 920–22; *United States v. Edelen*, 529 A.2d 774, 785–86 (D.C. 1987) (explaining that the "good faith exception" prevents exclusion where an officer's conduct is "objectively reasonable," such as conducting a search in reasonable reliance on a properly issued search warrant later found to be unsupported by probable cause or otherwise defective).  Our holding in *T.L., supra*, 996 A.2d at 816-17 explained that the justifications for the good faith exception to the exclusionary rule are inapplicable where police do not act in accordance with governing law.  *Id.*  In such cases, applying the good faith exception "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."  *Id.* at 817 (citing *United States v. Lopez-Soto*, 105 F.3d 1101, 1106 (9th Cir. 2000)); *accord United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003).

appellant's motion to suppress and judgment of the trial court and remand for proceedings consistent with our decision.

*So ordered.*