THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE BRADI, Defendant-Appellant.

Second District    No. 81-585

Opinion filed July 8, 1982.

Edward J. Egan and Samuel V. P. Banks, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was found guilty after a bench trial of possession of more than 30 grams of a substance containing cocaine, a violation of section 402(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(2)), a Class 1 felony. He was sentenced to four years in the penitentiary.

On February 14, 1980, the defendant, a Chicago police officer with 14 years of service, was on suspension for violation of the Chicago

residency requirement. On that date at 2:30 a.m., he was a passenger in a red two-seat 1969 Jaguar sports car being driven east on Irving Park Road in Roselle by Henry Budzynski. The car was stopped by Roselle police officer John Zaabel because he did not see a rear license plate. After the car was stopped, Zaabel determined that there was a rear license plate, but it was so obstructed with dirt as to be unreadable. The car was otherwise extremely clean. Officer Zaabel believed the driver of the car was Henry Budzynski; however, when asked for his driver's license, Budzynski produced a traffic ticket bearing the name "Henry Razem." Zaabel's later check of the car license plate showed the owner was Henry Razem. Zaabel's belief that the driver of the car was Budzynski was corroborated by Roselle Police Lieutenant Sola, who arrived on the scene shortly after the stop, and Zaabel testified the Roselle Police Department had criminal intelligence and a prior arrest record of Budzynski.

At one point after the car was stopped, when the driver exited the vehicle, Officer Zaabel noticed a bottle of champagne or wine on the passenger side floor, with the neck of the bottle wedged between the driver and passenger seats. He could not determine if the bottle was open or closed; however, according to the testimony given at the preliminary hearing, in answer to Zaabel's question, Budzynski had stated that the bottle was not open. Zaabel had not observed the defendant make any movement after the car was first stopped. According to Zaabel's testimony, he asked Budzynski and the defendant to exit the vehicle so he could more closely examine the champagne bottle, and for reasons of his own personal safety. As the defendant exited the car, Zaabel observed that he had an object in his hand which he appeared to be trying to throw under the car. Zaabel retrieved the object from the ground, finding that it was a clear plastic baggie containing a white powdery substance and a small piece of aluminum foil. Based on his five years' experience as a police officer, Zaabel believed the powdery substance to be some type of drug. He then told Budzynski and the defendant that they were under arrest, and orally gave them their *Miranda* warnings.

In the subsequent search of the car, the champagne bottle was discovered to be sealed, and a search of the console directly behind the two front seats yielded a knife, a brown paper bag containing three clear plastic baggies with white powdery substances in them, a green plastic box containing a scale and some powdery residue, and a two-thirds full envelope of pink pills. While defendant was being transported to the police station, Zaabel testified the defendant asked him to throw the "stuff" away before they got to the police station, since he knew he would have to charge him once they arrived. Zaabel asked the defendant what the substance was, and the defendant replied that "it" was an ounce of

coke (cocaine) and that it was for his own personal use. Later at the station, Zaabel testified the defendant asked what it would take to get him "out of this jam," and that if it was "bread" that he wanted, he would get him anything that the officer wanted.

According to the record, after the various substances were field tested at the police station, the defendant was advised that one of the substances tested did not show the presence of a controlled substance, and he was asked what it was. Defendant answered: "That's the cut." At trial, the State's expert witness, forensic scientist Deborah Juricic, testified the baggie the defendant had dropped was only preliminarily tested for the presence of a controlled substance, and that it contained .2 grams of a white powdery and chunky substance that possibly contained cocaine. Two of the other baggies retrieved from the car's console were tested and found to contain 20.6 and 23.7 grams respectively of a white powder conclusively determined to contain "L" cocaine. No quantitative analysis was performed to determine exactly how much cocaine was present in the powder.

On appeal the defendant presents the following issues: (1) whether the court erred in denying his motion to suppress; (2) whether he was not proved guilty beyond a reasonable doubt; (3) whether section 402(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(2)) is unconstitutional; (4) whether the court improperly construed section 402(a)(2) in imposing sentence, and (5) whether the court erred in admitting exhibit No. 6A into evidence.

At the outset, we note the State argues here, as it did below, that the defendant lacked standing to move to suppress the evidence since he was a passenger in the car, and he had not alleged an ownership or possessory interest in the car or a reasonable expectation of privacy therein. (*Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.) Further, the *Jones v. United States* rule of "automatic standing" was explicitly overruled in *United States v. Salvucci.* (*Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725; *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) Under that former rule in *Jones*, when possession of the seized evidence was an essential element of the offense charged, the accused automatically had standing to challenge the search and seizure.

The defendant's position, however, is that he has standing to challenge *stop* of the car, and that the ordering of him out of the car was without probable cause—thus constituting an illegal seizure—and that the evidence seized thereafter was "fruit of the poisonous tree" which should have been suppressed. Defendant correctly cites our decision in *People v. Kunath* (1981), 99 Ill. App. 3d 201, in support of his position that defendant, as the

occupant of a vehicle stopped by the police, can challenge the stop of the automobile since it entails an infringement of his personal freedom. The defendant argues that even if there was probable cause to arrest the driver, defendant had done nothing, and the officer had no probable cause to order him out of the car. Defendant contends that he was unlawfully "seized" when the officer ordered him out of the car.

The State's position is that the defendant was not "arrested" until the officer observed him throw the baggie on the ground, and that he had properly been ordered out of the car because the car had been lawfully detained for a traffic violation. In support, the State cites *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330, and *People v. Ehn* (1974), 24 Ill. App. 3d 340.

The defendant finds *Mimms* and *Ehn* distinguishable, stating that once the officer determined the vehicle did have a license plate, no further detention of the car was permissible, and that the State is incorrect when it says it is a violation of the law to have an obstructed license plate.

The resolution of this issue turns on whether the defendant was lawfully ordered out of the car. In this respect, *Pennsylvania v. Mimms* is most persuasive. In that case, the driver of a car was stopped for an expired license plate. The driver was asked by one of the officers to step out of the car and produce his owner's card and operator's license. When he stepped out, the officer observed a bulge under his sports jacket and thereupon conducted a frisk which yielded a loaded .38-caliber revolver. A .32-caliber revolver was discovered as well on a passenger in the car. The driver's motion to suppress the revolver on fourth amendment grounds was denied, and he was convicted. The Supreme Court of Pennsylvania reversed on the basis that the ordering of the driver out of the car constituted an impermissible " 'seizure' " since the officer had no " 'objective observable facts to support a suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety.' " *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 108, 54 L. Ed. 2d 331, 335, 98 S. Ct. 330, 332.

In its opinion reversing the Pennsylvania Supreme Court and affirming the defendant's conviction, the court in *Mimms* defined the focus of the inquiry as being,

> "* * * not on the intrusion resulting from the request to stop the vehicle or from the later 'pat down,' but on the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped." *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 54 L. Ed. 2d 331, 336, 98 S. Ct. 330, 332.

In answering the inquiry, the *Mimms* court weighed the interest of the officer's safety against the degree of the intrusion into the driver's

personal liberty, and found that "mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111, 54 L. Ed. 2d 331, 337, 98 S. Ct. 330, 333.

■■ ■ The initial stop of the car in the case at bar was lawful, first, because the officer thought there was no rear license plate and second, contrary to defendant's assertion, because it *is* a violation to have a license plate so dirty that it is illegible. (Ill. Rev. Stat. 1979, ch. 95½, par. 3—413(b).) The fact that this very dirty plate was affixed to an otherwise "extremely clean" and classic model automobile qualifies as a rather provocative circumstance on its own. Also of a suspicious nature was the appearance of the name "Henry Razem" on the ticket the driver produced in lieu of an operator's license, which was the name of the registered owner of the vehicle, when considered in the light of the fact that the officer knew the driver was Henry Budzynski and, in fact, Budzynski's identity was corroborated by a backup officer. The "corker," of course, was the officer's observation of a bottle of wine or champagne on the floor of the passenger side with the neck of the bottle obscured between the two front seats, as a consequence of which it was impossible for the officer to determine whether the bottle was open or closed. Considering also that it was 2:30 in the morning when most stores are closed and that the bottle was not in a bag, the officers could reasonably have concluded the car occupants probably were not just out shopping. Because the prohibition against open liquor in a car applies to a passenger, as well as a driver (Ill. Rev. Stat. 1979, ch. 95½, par. 11—502(a); *People v. Zeller* (1977), 51 Ill. App. 3d 935, 938), we believe the officer had a legitimate concern for his safety in asking the defendant to step out of the car. The officer was certainly not required to accept Budzynski-Razem's "word" that the bottle was closed, nor allow the defendant the opportunity to throw the bottle at him rather than hand it to him for inspection, or potentially to risk his life by leaning into the car with the defendant still seated therein, possibly within easy reach of a weapon.

The order to get out of the car was certainly a *de minimis* intrusion into the defendant's personal liberty and, in our opinion, did not amount to an arrest. We note here that defendant misstates *Mimms* as "conceding" that the ordering of a defendant from a car constitutes a " 'seizure.' " *Mimms*, in fact, explicitly refused to agree with that conclusion in reversing the Pennsylvania Supreme Court. (*Pennsylvania v. Mimms* (1977), 434 U.S. 106, 108, 54 L. Ed. 2d 331, 335, 98 S. Ct. 330, 332.) Based on the facts of this cause, we conclude the arrest occurred after the officer observed the defendant's attempt to dispose of the baggie containing the white powder upon exiting the car, and that the subsequent search of the

car and console was lawful, notwithstanding the fact the driver and the defendant were out of the car at the time. See *People v. Babic* (1972), 7 Ill. App. 3d 36; and *People v. Canaday* (1971), 49 Ill. 2d 416.

We conclude, therefore, the trial court correctly denied the defendant's motion to suppress, and no reversal is warranted on the basis of this issue.

The defendant next argues he was not proved guilty beyond a reasonable doubt of the knowing possession of the two baggies from the console of the car, and that exhibit No. 6A was improperly admitted into evidence. He argues that the State's attempt to show his knowing possession by virtue of his actions subsequent to arrest (*i.e.*, his request that the officer throw the "stuff" away; his statement that "it" was an ounce of coke for his own use; and his attempted bribe of the arresting officer) does not compensate for what the defendant considers to be deficiencies in the evidence. Specifically, defendant argues he was not the owner or operator of the car, his mere proximity to the substance does not prove his possession, and his statements after arrest do not show the knowledge required for conviction because it was not clear he was talking about anything other than the baggie he had attempted to throw away, *i.e.*, exhibit No. 5A, two-tenths of a gram of a white powder which a preliminary test showed possibly contained cocaine.

Defendant also points to the fact that a "mysterious" bag allegedly recovered from the console was not identified in court and, in fact, was destroyed by Officer Zaabel after it was field tested at the police station. Defendant contends there are too many questions left unanswered to permit a finding of guilty beyond a reasonable doubt. With regard to the admissibility of exhibit No. 6A, the defendant contends the record shows the evidence amounted to a suggestion of tampering. He points to these circumstances: the fact that only a preliminary test was performed on exhibit No. 5A; that exhibit No. 6A was put "to the side" over night; and that after an initial color test of No. 6A failed to reveal the presence of a controlled substance, more tests were later performed which showed conclusively the presence of cocaine and caffeine, and a total substance weight of 20.6 grams.

■■ ■ The State must establish two elements in order to obtain a conviction for possession: first, the knowledge of the defendant of the presence of narcotics and second, his immediate and exclusive control thereof. (*People v. Galloway* (1963), 28 Ill. 2d 355.) Knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place they were found. (28 Ill. 2d 355.) Possession may be actual or constructive possession and it may be jointly with another. (*People v. Embry* (1960), 20 Ill. 2d 331; *People v. Harris* (1975), 34 Ill.

App. 3d 906.) We believe the evidence clearly establishes the defendant had knowledge and constructive possession of the cocaine which was used as the basis of his conviction. That he had knowledge of the drugs located in the console is evident by his answer to Zaabel's question concerning the substance that field tested as negative for the presence of a controlled substance, "That's the cut." His constructive possession of the cocaine was established by proof of his statement to the officer that the "stuff" was an ounce of coke for his own personal use. Despite the defendant's attempt to suggest otherwise, the record clearly shows the "mysterious missing bag" which was destroyed by Zaabel was the fourth bag tested, it contained a white powder, and it must have been "the cut" since all the other exhibits submitted at trial were tested either preliminarily or conclusively and were determined to contain a controlled substance. Consequently, it is clear the defendant's reference to the "ounce of coke" was not a reference to the missing bag, nor was it a reference to the baggie he had tried to throw away. That bag contained only .2 grams of a white powdery substance, whereas an ounce is 28.349 grams. By the process of elimination, the defendant's statement must have been directed toward the contents of exhibits Nos. 6A and 7A, neither one of which, as the record shows, was pure cocaine. Exhibit No. 6A, a white powder substance containing caffeine and cocaine with a total weight of 20.6 grams, contained less than 5 grams of cocaine; exhibit No. 7A, a white powder substance weighing 23.7 grams, was less than 100% pure cocaine, but it was not known how much less than 100%. We conclude the defendant had knowing, constructive possession of the controlled substances contained in exhibits Nos. 6A and 7A. Therefore, his guilt was established beyond a reasonable doubt and his conviction should be affirmed.

■■ With regard to the admissibility of exhibit No. 6A, we note the defendant was asked by the court if he had any objection to the chain of custody in admitting exhibits Nos. 5/5A, 6/6A, 7/7A and 8/8A, and that the defendant's attorney responded: "Not really Judge, no." We believe the defendant thereby waived this issue on appeal. Notwithstanding waiver, we believe the defendant's assertion that the evidence suggests the possibility of tampering or alteration of the evidence is without merit. It was explained that the chemist's analysis of the various substances submitted to the laboratory is performed subject to time considerations which may limit the number of tests performed, and/or the number of exhibits tested, and that the testing policy is to "look for the highest scheduled substance, or go for a weight limit." Further, as defense counsel himself elicited, the reason exhibits Nos. 6A and 7A were not tested on the same day was simply that the chemist "ran out of time." We conclude exhibit No. 6A was properly admitted.

■■ Lastly, the defendant contends that section 402(a)(2) of the Illinois

Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(2)) is unconstitutional; alternatively, he contends the statute must be construed so as to find him guilty of only a Class 2, rather than a Class 1, felony. Defendant essentially argues the statute is unconstitutional as a violation of equal protection and/or is void for vagueness. In the alternative, he proposes the statute must be construed for sentencing purposes as proscribing the possession of 30 grams or more of cocaine (rather than 30 grams or more of "a substance containing cocaine"). Under this construction, defendant would be guilty of a Class 2, rather than a Class 1, felony.

The State asserts that *People v. Mayberry* (1976), 63 Ill. 2d 1, and *People v. Yettke* (1981), 95 Ill. App. 3d 365, are dispositive. We agree that *Mayberry* is dispositive. In the consolidated appeal in that case, the Illinois Supreme Court considered the constitutionality of the graduated penalty provisions of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 701 *et seq.*) and the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1100 *et seq.*). The respective defendants there had challenged the graduated penalty classifications on due process and equal protection grounds because the classifications were not based on the amount of pure cannabis or controlled substance involved but, rather, upon the amount of the substance containing the cannabis or controlled substance. The court noted the general rule is that a classification scheme will be upheld if any state of facts may reasonably be conceived which would justify the classification; it is only required that there be a reasonable basis for distinguishing between the classes created by the legislation. 63 Ill. 2d 1, 9.

In upholding the classification scheme, the Illinois Supreme Court determined that:

> "Our legislature may have believed that any given amount of drug can be distributed to a greater number of people and thus have a greater potential to be harmful if it is mixed with another substance. While the soundness of that belief may be questionable, the determination is one for the legislature to make, and we cannot find that the classifications schemes at issue have no reasonable basis." 63 Ill. 2d 1, 9.

The defendant's attempt to distinguish *Mayberry* from the instant cause on the basis that *Mayberry* involved delivery offenses rather than possession is without merit. The *Mayberry* court specifically noted that the Cannabis and Controlled Substances Acts contained several sections (including section 402) with penalty provisions based upon the weight of a mixed substance, rather than upon the weight solely of the substance sought to be controlled. It indicated that "this *type* of classification scheme" was the primary issue presented in those consolidated appeals.

(Emphasis added.) (63 Ill. 2d 1, 6.) Consequently, we conclude *Mayberry* controls the result here.

With regard to defendant's urging that section 402(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(2)) be construed so as to find him guilty of a Class 2, rather than a Class 1, felony, the primary rule in construing a statute is to give effect to the legislature's intent. (*People v. Jones* (1981), 99 Ill. App. 3d 882.) In light of *Mayberry* and its progeny, *People v. Yettke* (1981), 95 Ill. App. 3d 365, it is clear that the legislature was concerned with the quantity of the mixed substance possessed, not the quality. Consequently, the court must accede to the legislative intent.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

LINDBERG and REINHARD, JJ., concur.