In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-1515

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RODOLPHO HERNANDEZ FLORES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 14-CR-30068-MJR — **Michael J. Reagan**, *Chief Judge.*

ARGUED AUGUST 5, 2015 — DECIDED AUGUST 19, 2015

Before WOOD, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

PER CURIAM. Rodolpho Hernandez Flores was pulled over on an Illinois highway for driving with an obstructed license plate—his rear plate was affixed to his car by a standard frame that covered the plate's periphery. After Hernandez Flores consented to a search of his vehicle, police officers discovered over five kilograms of heroin, and Hernandez Flores confessed to transporting it. He later moved

to suppress the heroin and the confession, arguing that the officer did not have reasonable grounds to pull him over because his plate was not obstructed. Because the arresting officer could not have reasonably believed that Hernandez Flores's commonplace plate frame violated state law, we vacate the district court's judgment and remand for proceedings consistent with this opinion.

## Background

The facts are not in dispute. In April 2014, an Illinois State Police Trooper, Nate McVicker, saw Hernandez Flores driving down a highway. Hernandez Flores was driving "well under" the 65 mile per hour speed limit in a "very stiff and rigid" way "with both hands gripping the steering wheel very tightly and not relaxed as many motorists operate their vehicle." As he passed McVicker, Hernandez Flores changed lanes for "no apparent reason" and applied the brakes. The officer pulled out behind Hernandez Flores and "noticed the rear license plate had a bracket over it." The officer asserted that the frame made "it hard to ascertain what state it originated from." This is how the plate looked:



As McVicker neared Hernandez Flores, he could read the uncovered portion of the plate but stopped him anyway. Initially McVicker thought the plate was a "Colorado specialty plate," but he acknowledged that as he "got closer it appeared to read Baja California which is from Mexico." The officer asserted that the framing bracket may have been "covering another state or region above Baja California." He explained that he then pulled over the vehicle for what he believed was "the improper display of license plate due to it covering a portion of Baja California and whatever may be above it that was unknown." *See* 625 ILCS 5/3-413(b).

The plate-display law, 625 ILCS 5/3-413(b), states in relevant part:

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than 5 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate.

A violation of this statute is considered a "petty offense." *Id.* 5/16-104; 730 ILCS 5/5-1-17.

The stop led to a drug arrest. Under questioning through a translator, Hernandez Flores said that he was driving from Tijuana, Mexico, to Columbus, Ohio. While McVicker was writing a warning for the obstructed license plate, another trooper and his canine partner arrived and conducted a

free-air sniff around the car. The dog alerted, and when the officers searched the car they found a compartment in the engine containing more than five kilograms of heroin in vacuum-sealed bags. After Hernandez Flores was arrested and read *Miranda* warnings, he confessed that he had been paid $2,000 to drive the heroin from Mexico to Ohio. He was charged with possession with intent to distribute one kilogram or more of heroin. *See* 21 U.S.C. § 841(a)(1).

During the prosecution, Hernandez Flores moved to suppress his statements and the evidence seized from the truck. He argued that McVicker did not have reasonable suspicion to pull him over for violating the plate-display law because the plate's frame did not obstruct any of the plate's identifying information. He emphasized that the government's reading of the statute has the absurd result of criminalizing not only all license-plate frames, but mud spots covering part of a letter. Because the statute was not violated, he asserted, McVicker lacked reasonable suspicion to stop him.

The judge denied the motion to suppress, reasoning that the plate's frame violated the plate-display statute. He observed that the bracket covered the top half of the letters "B" and "j" in "Baja," the top half of the letters "C," "l," and "f" in "California," and some writing in the lower left of the plate. Acknowledging that the statute does not outlaw "every speck" on a plate, he explained that it does ban any obstruction that "interferes with" the visibility of the plate's information. And because the statute requires that a plate be both "clearly legible" and "free from any materials that would obstruct the visibility of the plate," the judge concluded that the statute was violated even though the officer

could "decipher" the plate. Hernandez Flores then entered a conditional guilty plea, reserving the right to appeal the denial of the motion to suppress, and was sentenced to 50 months in prison.

## Analysis

Hernandez Flores maintains on appeal that the district court should have granted his motion to suppress. He revises slightly the argument he presented in the district court, which was that, because he did not violate the statute, McVicker lacked reasonable suspicion to stop him. *See United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006). Recognizing that under *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014), only an *unreasonable* mistake of state law invalidates a stop, he now argues that McVicker's belief that the statute was violated was unreasonable. He suggests that the statute's requirement that plates be "free from any materials that would obstruct the visibility of the plate," should be read in context with "maintained in a condition to be clearly legible." In that context, the law bans only obstructions that interfere with law enforcement's ability to read the plate. Because McVicker was able to read the plate, he thus unreasonably believed that it violated Illinois law. McVicker's reading of the law, by contrast, leads to the absurd result that law enforcement may stop anyone using a customary frame to affix a license plate to a car.

To begin, the parties dispute the proper standard of review. Hernandez Flores advocates for de novo review because this court is reviewing a legal conclusion about reasonable suspicion. The government urges plain-error review because, it asserts, Hernandez Flores did not argue to the district court that McVicker made an "unreasonable mistake

of law" under *Heien*. *See United States v. Kelly*, 519 F.3d 355, 365 (7th Cir. 2008) (arguments not made before district court are subject to plain-error review). But *Heien*, which was released after the district court denied the motion to suppress, arguably replaced the pre-existing standard in our circuit under *McDonald* on which Hernandez Flores had relied. *McDonald* had invalidated arrests based on a reasonable but erroneous interpretation of state law. Hernandez Flores's appellate argument is thus a permissible, updated version of his preserved argument that reasonable suspicion is lacking. *See United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008) (new twist on old argument preserved for appellate review); *see also Molnar v. Booth*, 229 F.3d 593, 599 (7th Cir. 2000) (applying intervening Supreme Court decisions on de novo review of a preserved issue). Accordingly the argument is subject to de novo review.

On the merits, the parties agree that before making a brief traffic stop, police officers need at least reasonable suspicion to believe that the driver is breaking the law. *See Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). In particular, this court has recently held that a stop for a technical moving violation was lawful when the arresting officer reasonably believed that the violation was easily avoidable. *See United States v. Bentley*, No. 13-2995, 2015 WL 4529024, at *3 (7th Cir. July 28, 2015) (ruling that officer reasonably stopped driver for not signaling lane change, when law requires signaling if "practicable"). Reasonable suspicion can also rest on a reasonable mistake of law. *See Heien*, 135 S. Ct. at 536. But if the officer's mistake of law is unreasonable, the evidence collected from the traffic stop should be suppressed. *See id.* at 539; *United States v. Shields*, 789 F.3d 733, 742–46 (7th Cir. 2015). Thus to prevail here, Hernandez Flo-

res must show both that his plate's frame did not violate the law and that Officer McVicker unreasonably believed that it did.

We begin with the question whether Hernandez Flores's frame violated the plate-display statute and conclude that it did not. The Illinois Supreme Court has recently held that "trailer hitches, … wheelchair and scooter carriers, bicycle racks and rental trailers" will obstruct a license plate, but nonetheless plates obscured by these common car attachments do not violate the statute. *People v. Gaytan*, 32 N.E.3d 641, 650 (Ill. 2015). Otherwise "a substantial amount" of lawful conduct would be illegal in Illinois. *Id.* Plate frames like those in this case fall in the same category. Like rear-mounted trailers, they are common—car dealerships regularly provide them with the cars they sell, and Illinois's public universities, sports teams, and schools sell them to students, fans, and families. Rear-mounted trailers can obstruct the entirety of "at least one of the numbers on the license plate." *Id.* at 645. Plate frames, by contrast, generally surround the periphery of the plate, leaving the numbers and place of origin readable. If, as Illinois has determined, common rear-mounted trailers do not violate the statute, then neither can ordinary peripheral plate frames. *See United States v. Edgerton*, 438 F.3d 1043, 1050 (10th Cir. 2006) (rejecting strict reading of similar statute because it would lead to unreasonable conclusion that snow, rain, or fog would render license plate illegal); *Whitfield v. United States*, 99 A.3d 650, 652 (D.C. 2014) (rejecting literal interpretation of similar statute that would "effectuate a near-complete ban on the use of ubiquitous license plate frames").

But was it reasonable for Officer McVicker to conclude that the plate's frame violated this statute? We think not. Long before *Gaytan*, Illinois courts had held that the plate-display statute requires only that the plate's information be clearly visible and legible. *People v. Miller*, 611 N.E.2d 11, 20 (Ill. App. Ct. 1993) (plate must be clearly visible); *People v. Bradi*, 437 N.E.2d 1285, 1288 (Ill. App. Ct. 1982) (plate must be legible). And in holding that a plate obscured by a trailer hitch does not the violate the statute, *Gaytan* ruled that the arresting officer reasonably believed otherwise when he testified that he could not in fact see "at least one" of the plate's numbers. 32 N.E.3d at 652–53. But in this case, even though the frame covered a fraction of some letters, McVicker acknowledged that once he neared the car he could read "Baja California" on the plate. And based on the record photos in this case, that admission is one we would expect a reasonable officer to make. Even though some letters are not 100% unobstructed, "Baja California" is clearly visible and legible. If the frame does not impede a reasonable officer from reading a plate, then it is unreasonable to believe that the plate's information is not clearly visible and legible.

The government replies that even though the uncovered information was readable, McVicker reasonably suspected that the frame masked information above the top lettering, so the entire plate was not clearly visible. But that possibility proves too much: it is true of all similar frames. If McVicker's suspicion—that the frame covered "another state or region" in the plate's periphery—were reasonable, then it would justify stopping any of the vast number of cars driven lawfully but affixing plates with the ubiquitous frames like the one in this case. A suspicion so broad that would permit the police to stop a substantial portion of the lawfully driv-

ing public, unless the drivers all removed their plate frames, is not reasonable. *See United States v. Alvarado-Zarza*, 782 F.3d 246, 250 (5th Cir. 2015) (interpreting statute too broadly is unreasonable); *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 716 (8th Cir. 2014) (it is objectively unreasonable to interpret similar statute as meaning anything other than "readable" when case law establishes "readability" standard); *Whitfield*, 99 A.3d at 652 (literal interpretation of statute would unreasonably "effectuate a near-complete ban on the use of ubiquitous license plate frames"). It seems to us unrealistic—and unreasonable—to expect a wide segment of the driving population to remove these conventional plate frames in order to avoid a traffic stop. *See Delaware v. Prouse*, 440 U.S. 648, 661 (1979) (observing that courts must circumscribe "standardless and unconstrained discretion" that would otherwise allow officers to stop all drivers); *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999) (if officers are allowed to stop vehicles when drivers have not broken law, "the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive"). Accordingly, the stop was based on an unreasonable mistake of law and therefore lacked reasonable suspicion.

Because the traffic stop was not based on reasonable suspicion, the drugs seized and confession resulting from the stop should have been suppressed. We therefore VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.