139 Nev., Advance Opinion 59

IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID WILLIAM MCCORD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 85271

FILED

DEC 28 2023



Appeal from a judgment of conviction, pursuant to a bench trial, of trafficking in a controlled substance, 100 grams or more but less than 400 grams. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

*Reversed and remanded.*

Evelyn Grosenick, Public Defender, and Kathryn E. Reynolds, Chief Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Jennifer P. Noble, Chief Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, STIGLICH, C.J., and LEE and BELL, JJ.

23-42070

*OPINION*

By the Court, STIGLICH, C.J.:

Law enforcement pulled over appellant David McCord because McCord's Nevada license plate had a dealership frame around it that partially covered the word "NEVADA." According to the deputy who conducted the stop, although he was able to immediately identify the license plate and perform a license plate check, McCord's license plate was not legible as required by NRS 482.275(4). McCord was later charged with trafficking in a controlled substance after contraband was found in his car during the traffic stop. He sought to suppress the evidence on the basis that the traffic stop was unlawful. The State argued that the frame on McCord's license plate was foreign material and obscured the lettering imprinted on the plate, in violation of NRS 482.275(4), and served as probable cause for the traffic stop. The district court agreed and denied the motion to suppress.

In this opinion, we hold that a license plate frame does not constitute "foreign materials" within the meaning of NRS 482.275(4) and a license plate is "clearly legible" if the required registration information is readily identifiable. To hold otherwise would effectively ban license plate frames. Such an outcome would promote discretionary law enforcement and potentially subject otherwise law-abiding motorists to arbitrary or, as here, pretextual traffic stops. Accordingly, the district court erred in denying McCord's motion to suppress evidence obtained during the traffic stop because there was no probable cause to support the stop based on a

violation of NRS 482.275(4). We therefore reverse McCord's judgment of conviction and remand for further proceedings.[1]

## FACTS AND PROCEDURAL HISTORY

Detective Apryl McElroy of the Regional Narcotics Unit (RNU) developed a confidential informant whom she instructed to contact McCord and arrange a purchase of methamphetamine. The RNU informed Deputy Ned Nemeth, a member of a canine unit, that McCord would be traveling to Reno and might be in possession of a large amount of methamphetamine. In an effort to protect the informant's identity, the RNU asked Deputy Nemeth to conduct a "wall stop."[2] To facilitate this plan, the RNU provided the deputy with McCord's name and a description of the vehicle he would be driving. According to Deputy Nemeth, the RNU often gave him minimal information about criminal suspects so that he could perform pretextual traffic stops to build cases against those suspects.

Using the information provided by the RNU, Deputy Nemeth located McCord's vehicle and watched for any traffic violations to justify a vehicle stop. Because Deputy Nemeth observed no moving violations, he focused on the vehicle's license plate and the license plate frame. Although Deputy Nemeth immediately identified the license plate as a standard issue Nevada plate and was able to perform a license plate check, he concluded that the license plate nonetheless violated NRS 482.275(4) because the

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

[2]A "wall stop," as explained by Detective McElroy, is a police technique where canine units "conduct their own investigation, their own stop and conduct their own probable cause to stop a suspicious subject or vehicle that [the RNU] provide to them."

 

dealership frame partially covered the name of the state. Based on that perceived violation, Deputy Nemeth initiated a traffic stop.

After pulling over McCord, Deputy Nemeth approached the vehicle and spoke with him. Deputy Nemeth told McCord that he would issue a warning for the license plate violation and directed McCord to exit the vehicle to observe the violation. With McCord out of the vehicle, Deputy Nemeth performed a pat down search, discovered a scale with a white crystalline substance on it in McCord's pocket, and asked McCord for permission to search the vehicle. McCord refused to consent to the search. Another deputy arrived on the scene shortly after Deputy Nemeth pulled over McCord. While that deputy worked on the warning citation for the obstructed license plate, Deputy Nemeth deployed his drug detection canine, and the canine alerted to the presence of drugs in the vehicle. A search revealed approximately 187 grams of methamphetamine. As a result, McCord was charged with trafficking in a controlled substance.

Before trial, McCord moved to suppress the evidence obtained during the search, arguing that Deputy Nemeth lacked probable cause to make the stop. The district court disagreed, finding that McCord's license plate violated the plain language of NRS 482.275(4) because the plate holder was "in itself a foreign material" and the words "NEVADA" and "Home Means Nevada" were obscured by the holder and thus provided probable cause for the stop. Accordingly, the district court denied the motion to suppress.

After a bench trial, McCord was found guilty of trafficking in a controlled substance, 100 grams or more but less than 400 grams, and was sentenced to serve a minimum of 60 months and a maximum of 150 months in prison. This appeal followed.

## DISCUSSION

McCord argues that the district court erred in denying his motion to suppress and finding that the traffic stop was reasonable. A motion to suppress evidence presents mixed questions of fact and law. *State v. Beckman*, 129 Nev. 481, 485, 305 P.3d 912, 916 (2013). We "review[ ] findings of fact for clear error, but the legal consequences of those facts involve questions of law that we review de novo." *Id.* at 486, 305 P.3d at 916.

The Fourth Amendment safeguards individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Nev. Const. art. 1, § 18. A traffic stop is a seizure and therefore is subject to the Fourth Amendment's requirement of reasonableness. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Such stops are "reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "The reasonableness requirement strikes a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *State v. Rincon*, 122 Nev. 1170, 1175, 147 P.3d 233, 236 (2006) (internal quotation marks omitted).

It is undisputed that Deputy Nemeth stopped McCord's vehicle under the pretext that the license plate frame obscuring the name of the issuing state violated NRS 482.275(4).[3] The district court found that there

---

[3]The State suggests that Deputy Nemeth had probable cause, independent from the license-plate violation, based on the information provided by the RNU. Although the State raised this alternative argument below, the district court denied the motion to suppress based solely on the alleged violation of NRS 482.275(4) as providing probable cause for the traffic stop. Therefore, we decline to address the State's alternative argument. *See McKay v. City of Las Vegas*, 106 Nev. 203, 207, 789 P.2d 584,

 

was probable cause for the stop because the license plate frame on McCord's vehicle covered parts of the lettering imprinted on the plate such that it was not "clearly legible" and because the license plate frame was "foreign material." McCord contends that the district court's interpretation of the statute was erroneous.

Statutory interpretation presents a question of law, which we review de novo. *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). When interpreting a statute, the objective "is to give effect to the Legislature's intent." *Id.* To determine legislative intent, we first look to the statute's plain language. *Id.* "[W]e interpret clear and unambiguous statutory language by its plain meaning unless doing so would lead to an unreasonable or absurd result." *Moore v. State*, 136 Nev. 620, 622-23, 475 P.3d 33, 36 (2020).

*Proper display of license plates*

In relevant part, NRS 482.275(4) provides that "[e]very license plate . . . must be maintained free from foreign materials and in a condition to be clearly legible." The statute thus requires that all license plates meet two requirements: (1) "be maintained free from foreign materials" *and* (2) "be clearly legible." The use of the conjunctive "and" means that if either condition is not satisfied, a license plate is not properly displayed. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 117 (2012) (explaining that "the conjunction *and*," when used between two elements, "entails an express or implied *both* before the first element"). Therefore, we address each requirement in turn.

---

586 (1990) (declining to resolve an issue because the parties did not litigate and the district court did not decide the matter).

*Whether the license plate was free from foreign materials*

McCord argues that the district court erred in concluding that the license plate frame constituted a "foreign material" for purposes of NRS 482.275(4). License plate frames "generally surround the periphery of the plate, leaving the numbers and place of origin readable." *United States v. Flores*, 798 F.3d 645, 649 (7th Cir. 2015). The district court acknowledged McCord's argument that license plate frames are widely used. Indeed, as evidenced by the frame at issue here, automotive dealerships regularly supply frames after a vehicle purchase. And many people attach frames to show allegiance to a social group, alma mater, or sports team as a means of self-expression. Although the Legislature did not define "foreign materials," we are not convinced that the Legislature intended the term to include all license plate frames.

We have already determined that maintaining a license plate "free from foreign materials" is its own requirement under NRS 482.275(4). But in determining the meaning of that requirement, we cannot read it in isolation but must construe the statutory provision as a whole. *See Orion Portfolio Servs. 2, LLC v. County of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010) (recognizing that "[t]his court has a duty to construe statutes as a whole"). Consistent with NRS 482.275(4)'s overall focus on visibility and legibility, the Legislature clearly intended to ensure that drivers display the required registration information. The purpose of requiring motorists to properly display a license plate is so that a vehicle, and its owner, can be easily identified. *See generally State v. Harrison*, 846 N.W.2d 362, 369 (Iowa 2014) (explaining that "[a]n important purpose of [Iowa's display-of-license-plates law], along with related sections, is to allow police and citizens to identify vehicles"). This purpose is not frustrated by a frame designed to go around the license

SUPREME COURT
OF
NEVADA

7

(O) 1947A

plate, securing the plate—or the temporary dealer placard affixed after a sale—to the vehicle, which makes the frame sufficiently connected and related to the plate itself such that it is not "foreign." *See Foreign, Merriam-Webster's Collegiate Dictionary* (11th ed. 2014) (defining "foreign," in part, as "alien in character: not connected or pertinent"). Reading the term "foreign materials" broadly to include any specialty or dealer license plate frame would yield an absurd result, as "[s]imply driving a car off the dealer's lot with that type of license plate frame would amount to a violation and give officers a basis to stop the car." *State v. Carter*, 255 A.3d 1139, 1156 (N.J. 2021). And allowing law enforcement the discretion to stop any vehicle with a frame attached to the license plate does not further NRS 482.275(4)'s purpose of ensuring vehicles can be identified. Considering common sense and the public policy interests underlying NRS 482.275(4), we believe that the context and intent of the statute requires a narrow application. Accordingly, we cannot read the requirement that license plates "be maintained free from foreign materials" as including all license plate frames.

Other courts have likewise concluded that license plate frames that do not conceal necessary identifying information do not constitute a traffic violation. In *Whitfield v. United States*, the United States Court of Appeals for the District of Columbia Circuit explained that a literal interpretation of a license plate display regulation would "effectuate a near-complete ban on the use of ubiquitous license plate frames." 99 A.3d 650, 652 (D.C. Cir. 2014). The regulation at issue provided that "[i]dentification tags shall be maintained free from foreign materials and in a clearly legible condition." *Id.* at 657 (quoting D.C. Mun. Regs. tit. 18, § 422.5 (2007)). The court was "not persuaded that a literal interpretation, prohibiting the

placement of *any* foreign material over the tag, regardless of whether it obstructs relevant information, furthers any legitimate purpose and would not instead border on unreasonable." *Id*. at 661. Thus, the court declined to interpret the language of the regulation "so broadly as to effectuate a ban on virtually all license plate frames, even those which do not obstruct identifying information." *Id*. at 663; *see also State v. Morris*, 270 So. 3d 436, 439 (Fla. Dist. Ct. App. 2019) (holding that a license plate frame did not constitute "obscuring matter" and therefore did not violate Florida's license plate display statute (internal quotation marks omitted)).

The Legislature is empowered to enact traffic laws as it sees fit to further the compelling public interest in safe roadways. *See Hinegardner v. Marcor Resorts, L.P. V.*, 108 Nev. 1091, 1096, 844 P.2d 800, 804 (1992) (observing that when an "issue involves many competing societal, economic, and policy considerations, the legislative procedures and safeguards are well equipped to the task of fashioning an appropriate change, if any"). As other courts have observed, "if the legislature wanted to outlaw license plate frames, which are most often placed on the plates by auto dealers, it could have done so." *Morris*, 270 So. 3d at 439. Absent a clear prohibition by the Legislature against the act of applying a license plate frame that does not prevent a vehicle from being identified, we decline to interpret NRS 482.275(4) as doing so.

*Whether the license plate was clearly legible*

McCord argues that the district court erred in concluding that he violated NRS 482.275(4) because the frame completely covered the phrase "Home Means Nevada" at the bottom of the plate and partially obscured the word "NEVADA" at the top of the license plate. The State contends that McCord's license plate violated the statute because the frame "intrudes onto the written portion of the plate itself."

 

*A license plate frame covering nonessential information imprinted on a license plate does not violate NRS 482.275(4)*

McCord asserts that the license plate frame covering the phrase "Home Means Nevada" imprinted on the bottom of the license plate is inconsequential. We agree. As acknowledged above, the Legislature intended to ensure that required information is displayed for the purpose of identification. The name of the state song is not necessary identifying information as required by Nevada law. *See Whitfield*, 99 A.3d at 664 (holding that law enforcement "made a mistake of law by stopping appellant's vehicle . . . when the plate's critical identifying information was clearly legible and the license plate frame only obstructed the Texas state nickname on the bottom of the plate"). Under NRS 482.270(5), license plates must display (1) the alphanumeric registration designation; (2) the state name, whether in full or abbreviated; and (3) either the calendar year of registration or the month and year when the registration will expire. A license plate frame covering nonessential information imprinted on license plates does not prevent a vehicle from being readily identified. Therefore, we conclude that a license plate frame covering optional phrases imprinted on standard or specialty license plates does not violate NRS 482.275(4).

*A license plate is properly displayed if the necessary information is readily identifiable*

McCord argues that the district court erred in concluding that that the partial covering of the state name provided probable cause for the traffic stop. Despite the partial obstruction, we agree because the necessary information displayed on the license plate remained readily identifiable.

NRS 482.275(4) requires a license plate "to be clearly visible" and "clearly legible." "Legible" is generally defined as "capable of being read or deciphered" or "capable of being discovered or understood." *Legible,*

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2014). There is a public policy interest in requiring motorists to display a legible license plate because "[l]aw enforcement officials frequently must determine from tag numbers whether a vehicle is stolen; whether it is properly registered; or whether its occupant is suspected of a crime, is the subject of a warrant, or is thought to be armed." *State v. Hayes*, 660 P.2d 1387, 1389 (Kan. Ct. App. 1983); *see also Hinojosa v. State*, 319 S.W.3d 258, 265 (Ark. 2009) (noting that "it is important that the name of the license plate's issuing state be clearly visible for law enforcement officers to identify vehicles that are the subject of 'NCIC BOLOS' (National Crime Information Center 'Be on lookout for' bulletins), and to facilitate citizens' identification of license plates in order to report reckless or intoxicated drivers").

We disagree with the State that NRS 482.275(4) prohibits "even slight infringements on the legibility of the license plate." Reading NRS 482.275(4) to prohibit frames that cover a fraction of some lettering on the license plate provides no guidance to law enforcement. Such an interpretation would give law enforcement nearly unlimited discretion to conduct pretextual stops of vehicles, some which may be random or discriminatory. To avoid similar concerns, the New Jersey Supreme Court in *Carter* chose to apply a narrow reading of the New Jersey license plate display law. 255 A.3d at 1157 ("Because we assume that the Legislature would want us to construe the statute in a way that conforms to the Constitution, we adopt the narrower reading." (internal quotation marks omitted)). Likewise, we construe NRS 482.275(4) narrowly.

*Carter* further supports our interpretation of NRS 482.275(4). The *Carter* court had the opportunity to consider two alleged violations—one involving a license plate frame that covered the entire phrase "Garden

State," and one involving a frame that covered 10 to 15 percent of the same phrase. 255 A.3d at 1148-49. The court determined that the license plate display law "require[d] that *all* markings on a license plate be legible or identifiable" and concluded there was a traffic violation where the frame entirely covered "Garden State." *Id.* at 1157 (emphasis added). For the frame that only partially covered the phrase, however, the court concluded that there was no traffic violation because the license plate was still legible. *Id.* The court focused, as we do, on the legibility of the license plate and not on the fact that there was a slight obstruction by the frame.

We find further support for our interpretation from the United States Court of Appeals for the Seventh Circuit. In *Flores*, the court reviewed the reasonableness of a traffic stop for a license plate frame that covered the top portion of some of the lettering on the plate that identified the vehicle as registered in Baja California. 798 F.3d at 647. The police officer believed that the frame violated an Illinois statute requiring license plates "to be clearly visible" and "maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate." *Id.* (quoting 625 Ill. Comp. Stat. Ann. 5/3-413(b) (West 2013)). The court explained that license plate frames are prevalent and reasoned that "[i]t seems to us unrealistic—and unreasonable—to expect a wide segment of the driving population to remove these conventional plate frames in order to avoid a traffic stop." *Id.* at 648-49. The court concluded that the police officer could not have reasonably believed that a driver's use of a license plate frame found on a "vast number of cars" violated the law. *Id.* at 649-50.

We are not presented, as the Kansas Court of Appeals was, with a case in which the license plate was issued by another state and the Nevada

police officer was unable to identify the state name or otherwise identify the issuing state from the license plate. *Hayes*, 660 P.2d at 1388, 1390 (considering a scenario where the state name was not visible on the out-of-state license plate and the officer could not identify the issuing state based on the displayed state nickname and determining that "the covering of the state name on a vehicle's license tag renders the tag illegible within the prohibition" under Kansas' license plate display law and justified the traffic stop); *see also Nelson v. State*, 544 S.E.2d 189, 190 (Ga. Ct. App. 2001) (explaining that, "[a]lthough the [Georgia] officer testified that the tag appeared to be a Texas tag, officers should not be forced to guess at the origin of a vehicle tag"). Rather, the situation we consider is one where the deputy was able to immediately identify the issuing state. *See Carter*, 255 A.3d at 1157 (concluding that a partial obstruction of the words "Garden State" did not violate the law where the police officer "conceded he could clearly identify the phrase on the license plate").

In this case, McCord's license plate was clearly legible. Although the license plate frame covered a portion of the word "NEVADA," the word was still readily identifiable. Deputy Nemeth admitted as much when he testified that he identified the issuing state as Nevada and was able to perform a license plate check before initiating the traffic stop. Because the essential information displayed on McCord's license plate remained readily identifiable, we conclude the license plate was legible within the meaning of the statute. Therefore, we conclude that the district court erred in finding that McCord's license plate violated NRS 482.275(4).[4]

---

[4]The State does not argue that this error was harmless, nor could it, given that the verdict depended entirely on the evidence obtained during the traffic stop.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

*CONCLUSION*

A license plate frame does not in and of itself constitute a "foreign material" within the meaning of NRS 482.275(4), and a license plate is "clearly legible" when the required information remains readily identifiable. To hold otherwise would effectively ban the use of ubiquitous license plate frames and promote subjective law enforcement. Such an outcome would be for the Legislature to clearly authorize, not for this court to divine. Because the identifying information on McCord's license plate was readily identifiable, Deputy Nemeth lacked probable cause to justify the traffic stop for a violation of NRS 482.275(4). We therefore conclude that the district court erred in finding that the traffic stop was reasonable and in denying the motion to suppress evidence seized during the stop. Accordingly, we reverse the judgment of conviction and remand this matter for further proceedings consistent with this opinion.[5]

_____, C.J.
Stiglich

We concur:

_____, J.
Lee

_____, J.
Bell

---

[5]Given our conclusion, we need not address McCord's contention that the district court erred in denying a motion to suppress statements he made after the traffic stop.


